UNITED STATES of America ex rel.
Anthony LASH, Petitioner,

v.

Warden Keith COOPER and Attorney General of the State of Illinois Jim Ryan, Respondents.

No. 95 C 6681.

United States District Court,
N.D. Illinois.

Dec. 23, 1996.

Anthony Lash, Mt. Sterling, IL, pro se.

Arleen C. Anderson, Attorney General's Office, Chicago, IL, for Keith Cooper, Jim Ryan.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Petitioner Anthony Lash, an inmate at the state prison in Joliet, Illinois, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254, naming Warden Keith Cooper and Illinois Attorney General Ryan as respondents.[1] After careful review, the Court finds that Lash's petition must be denied.

1. Attorney General Ryan is improperly named in this action. Under Rules 2(a) and 2(b) of the Rules Governing Section 2254 Cases in the United States District Courts, when a petitioner is in present custody, the petition for habeas corpus relief should only name the state officer having custody of the petitioner. Only when the petitioner may be subject to future custody should the petition name as respondent both the state officer who presently has custody over the applicant and the state attorney general as respondents. See RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS, Rule 2(a) & (b); see also Hogan v. Hanks, 97 F.3d 189, 190 (7th Cir.1996) (citing Cruz v. Warden of Dwight Correctional Center, 907 F.2d 665, 665 n. 1 (7th Cir.1990)). As Lash is presently in state custody, Attorney General Ryan is not a proper party.

2. Lash asks this Court to make an independent finding of facts. However, subsection (e) of 28 U.S.C. § 2254 mandates that, on habeas review, federal courts must apply a presumption of correctness to the factual determinations made by a

## RELEVANT FACTS

On November 16, 1990, a Illinois state jury convicted petitioner Anthony Lash of murder. After Lash's conviction, he was sentenced to 34 years in jail. Lash appealed his conviction directly to the Illinois appellate court, which affirmed his conviction on February 22, 1993. Lash then petitioned for leave to appeal to the Illinois Supreme Court. His petition was denied in an order dated May 10, 1993. The following facts are taken from the order of the Illinois appellate court that affirmed Lash's conviction.[2]

At about 10:15 p.m. on July 2, 1989, James Towns was fatally shot. Detective Kill of the Chicago Police Department had Detective Fred McKinley bring Lash in for questioning about the murder on September 14, 1989. Kill was familiar with Lash because he had interviewed Lash earlier about an unrelated attempted murder. Lash, who was then 16 years old, was being held in the Audy Home as a suspect in that attempted murder.

McKinley picked Lash up at about 9:00 a.m. Kill's questioning of Lash began at 11:00 a.m. in the presence of Kill, McKinley, and Youth Officer Balcitis. Neither Lash's parents nor a lawyer were present during the interview. Youth Officer Balcitis did not meet with Lash alone before or during the

state court if the determinations were made after a hearing on the merits and are fairly supported by the record. See id.; Sumner v. Mata, 449 U.S. 539, 546–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981); Armstrong v. Young, 34 F.3d 421, 426 (7th Cir.1994). "That presumption applies not only to the state court's express factual findings, but also to the implicit resolution of a factual dispute that can be fairly inferred from the state court record." Armstrong, 34 F.3d at 426. The petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In Lash's habeas petition, he maintains that he did not make any confession to the police. The Illinois court of appeals found that his confession was voluntary, thus implicitly finding that he did make a confession. People v. Lash, 252 Ill. App.3d 239, 243, 191 Ill.Dec. 751, 754, 624 N.E.2d 1129, 1132 (1st Dist.1993). These holdings are supported by the record, and Lash has offered no evidence to the contrary. Accordingly, the presumption of correctness applies.

questioning. Kill attempted to contact Lash's parents before the interview started, but they were both at work and Kill could not reach them. Lash contends that Kill knew from his earlier investigation of Lash that Lash's parents both worked until mid-afternoon, and that Kill deliberately timed the interview so that Lash's parents would not be available. Kill and McKinley also knew that Lash was represented in the other investigation (of the attempted murder charge) by an attorney. Kill and McKinley testified that Lash did not ask that his parents or his attorney be contacted; Lash testified that he did ask to call his parents or a lawyer.

At the interview, Kill reintroduced himself and introduced McKinley and Balcitis, and read Lash *Miranda* warnings from an FOP handbook. Lash, who had been read the same warnings during a July 19 interview regarding the attempted murder charge, indicated that he understood each right. Kill also told Lash that the nature of the charges allowed him to be charged as an adult. Lash indicated that he understood and that he wished to make a statement about the Towns murder.

Kill testified at trial that Lash made an oral statement in which he confessed that on July 2, he and some friends drove past Towns' house several times in a brown station wagon, and then parked near the house. Lash noticed that Towns' car windows were open and expected that Towns would come out to roll them up. When Towns did so, Lash approached Towns, fired four shots at him, and then drove off in the brown station wagon. Lash later gave the gun to someone else who in turn sold it. The police eventually obtained the gun and it was introduced as evidence at trial.

Lash contends that he never made any statement, but that the police were "asking me questions in force as if putting words in my mouth" and were telling him what happened. Lash's statement was not reduced to writing or signed. At the suppression hearing, Lash testified that he was frightened

during the interview because he thought he would be beaten.[3] After hearing the evidence, the trial court found that Lash had not asked for an attorney, had received a proper warning of his rights, had had previous experience with custodial interrogations, had not been physically abused, and that the interrogation had lasted about a half hour. On the basis of these findings, the court held that the confession was voluntary and denied Lash's motion to suppress.

At trial, the evidence against Lash came primarily from his confession and from eyewitness testimony from Eugene Hammond, a neighbor of Towns. Hammond testified that he lived four houses down from Towns. He was in his front yard talking with a friend at about 10 p.m. on July 2, 1989, when he noticed a brown station wagon with four people in it. He had seen the same car drive by earlier that day. About that time, Towns came out of his house and went to his car to roll up the windows. The brown station wagon stopped and Lash got out and walked down the sidewalk toward Towns, passing about ten to fifteen feet from Hammond as he did so. The street lights were on, and Hammond saw Lash's face when Lash looked at him. Towns turned and saw Lash and began yelling for help. Lash shot Towns from a short distance away and then ran. About four minutes later, Hammond saw the brown station wagon drive by the murder scene.

In August 1989, the police showed Hammond a photograph of Lash, which he later identified in court. In September 1989, Hammond viewed a lineup at the police station and identified Lash. At trial, Hammond identified a photograph of the lineup and identified Lash in that picture.

Lash testified at his trial, denying any involvement with Towns' murder, and claiming that the police fabricated his confession.

Before trial, Lash obtained a motion *in limine* precluding the State from referring to his prior juvenile record or his open charge of attempted murder. The trial court also

---

**3.** At trial, Lash testified that Kill pushed his head against the wall during the interview. This testimony conflicted with that given during the sup- pression hearing, when Lash did not describe any actual use of force.

ruled that unless the jury requested to see the photographs from which he was identified, i.e., mug shots, the pictures would not be shown.

At trial, the prosecutor asked Kill about the photographs shown to witnesses:

Q: What did those pictures show?

A: They were what are commonly called mug shots, identification photographs taken by the Chicago Police Department of persons previously arrested.

Lash's attorney objected and the jury was instructed to disregard the comment. At some point, Kill also testified that he knew Lash. During deliberations, the jury asked to see, and were given, the photographs. The photographs showed front and side views of Lash and four other persons. Lash's placard contained the following information: "2 CHGO PD YD 212051 25 Jan 88." The other individuals' placards contained similar information.

During closing arguments, the prosecution repeatedly implied that witnesses were afraid to testify against Lash, making six statements to which Lash objected. The first five statements were on the theme that the State had been unable to assemble any other witnesses to testify because people were afraid to come forward during the investigation or testify in court. The final statement suggested that Lash had some control over the number of witnesses the State was able to produce. All but one of these statements were made during rebuttal. The State also made four comments during closing to the effect that someone else had sent Lash out or put him up to kill Towns. No evidence of involvement by any other person was presented at trial.

On direct appeal, Lash raised five errors: (1) his pretrial motion to suppress was erroneously denied; (2) evidence of other crimes, i.e., Kill's testimony about the mug shots and his statement that he was already familiar with Lash, was improperly admitted; (3) testimony about the way that police were led to identify him as the suspect should not have been admitted; (4) a statement by the prosecutor suggesting that the confession must have been proper or it would not have been admitted at trial was erroneously admitted;

and (5) he was denied a fair trial by multiple improper comments by the prosecution during closing arguments. The appellate court considered and rejected all of these arguments in an opinion issued February 22, 1993. *See People v. Lash,* 252 Ill.App.3d 239, 191 Ill.Dec. 751, 624 N.E.2d 1129 (1st Dist. 1993).

With respect to Lash's argument that his confession was fabricated, the court noted that "[a]ssessing the voluntariness of a juvenile's confession requires great care," although the test for voluntariness is the same for both juveniles and adults: "whether the statement was made freely, without compulsion or inducement of any sort, or whether defendant's will was overcome when he made the statement." *Id.,* 252 Ill.App.3d at 243, 191 Ill.Dec. at 754, 624 N.E.2d at 1132 (citations omitted). Examining all of the evidence regarding the confession, the appellate court concluded that the manifest weight of the evidence supported the trial court's finding that the confession was made voluntarily.

The appellate court found that the Kill's description of the photos as "mug shots" of "persons previously arrested" was improper, and criticized the State for deliberately eliciting this testimony. The court found, however, that the admission of other crimes evidence did not rise to a level that would warrant reversal under Illinois law. In this case, the mug shots were relevant to resolve the issue of identification, which was in dispute. Therefore, the probative value of the evidence outweighed the prejudicial effect, and the mug shots' admission was "harmless beyond a reasonable doubt." *Id.,* 252 Ill. App.3d at 248, 191 Ill.Dec. at 759, 624 N.E.2d at 1136. Likewise, the court found that the remarks made by the prosecution during closing arguments were either supported by evidence or were harmless error. *Id.,* 252 Ill.App.3d at 252, 191 Ill.Dec. at 754, 624 N.E.2d at 1139. The appellate court affirmed Lash's conviction.

Lash petitioned the Illinois Supreme Court for leave to appeal. In his petition, he raised the following five arguments: (1) the appellate court's holding regarding the prosecution's remarks regarding witnesses' fear of

coming forward conflicted with *People v. Mullen,* 141 Ill.2d 394, 408, 152 Ill.Dec. 535, 542, 566 N.E.2d 222, 229 (1990) (witness's statement that he was afraid to testify was plain error requiring a new trial where statement was not supported by the record); (2) the court's holding regarding the other prosecutorial remarks conflicted with *People v. Moya,* 175 Ill.App.3d 22, 24, 124 Ill.Dec. 676, 678, 529 N.E.2d 657, 659 (1st Dist.1988) and *People v. Strong,* 151 Ill.App.3d 28, 40, 104 Ill.Dec. 247, 256, 502 N.E.2d 744, 753 (3rd Dist.1986), which held that it was reversible error for the prosecution to argue facts known to be false and unsupported by the record; (3) the appellate court's holding concerning the admission of the other crimes evidence conflicted with *People v. Arman,* 131 Ill.2d 115, 137 Ill.Dec. 5, 545 N.E.2d 658 (1989) and *People v. Graham,* 179 Ill.App.3d 496, 128 Ill.Dec. 777, 534 N.E.2d 1382 (2nd Dist.1989); (4) the supreme court should address whether exclusion is the remedy when the State violates 705 ILCS §§ 405/5–5 & 5–6 (formerly Ill. Rev. Stats. ch. 37, §§ 805–5, 805–6), which concern police duties in connection with the questioning of a minor; and (5) leave to appeal was necessary to correct the appellate court's denial of Lash's constitutional rights to a full and fair hearing on appeal. The petition for leave to appeal was denied.

Lash has now filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He claims that: (1) he was deprived of his Fifth Amendment rights when the police questioned him outside the presence of his parents or his lawyer; (2) the State's elicitation of prior arrests at trial deprived him of his Fourteenth Amendment right to a fair trial; and (3) his Fourteenth Amendment right to a fair trial was violated by the State's improper remarks during closing arguments implying that he had intimidated potential witnesses against him.

## LEGAL STANDARDS

A court will reach the merits of a petitioner's habeas claims only if he has exhausted his state remedies and avoided procedural default of those claims. *Lostutter v. Peters,* 50 F.3d 392, 394 (7th Cir.1995). "Exhaustion is accomplished when claims have been presented to the highest state court for a ruling on the merits, or, when the claims could not be brought in state court because no remedies remain available at the time the federal petition is filed." *Farrell v. Lane,* 939 F.2d 409, 410 (7th Cir.1991) (citing *United States ex rel. Simmons v. Gramley,* 915 F.2d 1128, 1132 (7th Cir.1990) and *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 1570 n. 28, 71 L.Ed.2d 783 (1982)). As the Supreme Court noted in *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991), the exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." As exhaustion is not at issue in this case, we focus on the closely related doctrine of procedural default.

A habeas petitioner's claims are procedurally defaulted where the federal claims were not "fairly presented" to the state courts. *Jones v. Washington,* 15 F.3d 671, 675 (7th Cir.1994); *see also Verdin v. O'Leary,* 972 F.2d 1467, 1474 (7th Cir.1992). Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir.1992). As Judge Shadur recently summarized, procedural default might occur by the petitioner's failure to pursue all of the appeals required under state law in a timely manner, or by the petitioner's failure—notwithstanding his or her diligent pursuit of all required appeals—to raise at the state level the federal claims asserted in the habeas petition. *See United States ex rel. Balderas v. Godinez,* 890 F.Supp. 732, 738 (N.D.Ill.1995). Procedural default also occurs where the state court decision supporting the petitioner's confinement was decided on an adequate and independent state law ground (either substantive or procedural). *See Coleman v. Thompson,* 501 U.S. at 729–32, 111 S.Ct. at 2553–55. As the Court explained in *Coleman,* "[j]ust as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural

requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Id.* at 731–32, 111 S.Ct. at 2555. Procedural default of a petitioner's federal claims will bar their review in a federal habeas proceeding "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750, 111 S.Ct. at 2565.

For those claims that survive the exhaustion and procedural default analysis, the standard of review is strict. Under the habeas corpus statute as recently amended, federal courts must deny a petition for habeas corpus with respect to any claim adjudicated on the merits in a state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996) (recently amended version of § 2254 applies to cases such as this one). With the foregoing standards in mind, we now consider Lash's claims.

## ANALYSIS

### I. PROCEDURAL DEFAULTS

The State claims that Lash has procedurally defaulted on two of his three § 2254 claims on direct appeal, specifically, Lash's Fifth Amendment claim regarding the admission of his allegedly involuntary confession in his petition for leave to appeal to the Illinois Supreme Court, and his Fourteenth Amendment claim that the admission of evidence of prior arrests denied him a fair trial in either Illinois court. Lash's briefs fail to address the issue of procedural default, other than by arguing generally that he properly advanced his claims in the state courts, and that his claims are properly before this Court. The Court finds that Lash has indeed procedurally defaulted these claims.

■ A "federal claim must be fairly presented to the state courts." *Picard v. Con-*

*nor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). There are no magic words that save an issue from waiver for lack of fair presentment. *United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 454 (7th Cir.1984). But where the petitioner does not: "(a) rel[y] on pertinent federal cases employing [federal] constitutional analysis; (b) rel[y] on state cases employing [federal] constitutional analysis in like fact situations, (c) assert[ ] the claim in terms so particular as to call to mind a specific right protected by the [U.S.] Constitution ... [or] (d) alleg[e] a pattern of facts that is well within the mainstream of [federal] constitutional litigation," the state courts cannot be deemed to have considered the federal constitutional issue. *Id.* (quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2nd Cir.1982) (en banc)).

■ In his brief to the Illinois court of appeals, Lash argued that his confession was obtained through coercive questioning in violation of his Fifth Amendment rights, thus presenting the federal constitutional claim clearly. However, in his petition for leave to appeal to the Illinois Supreme Court, Lash claimed only that the Illinois appellate court erred in failing to articulate the remedies available for police violation of Ill.Rev.Stat. ch. 37, §§ 805–5 & 805–6 (now codified at 705 ILCS §§ 405/5–5 & 5–6), "which outline the duties of police during questioning of minors in custody without warrant." The full text of Lash's argument to the Illinois Supreme Court on this subject follows.

> Presently, that which exists in the law is an anomaly, the legislature has set out duties for the police while questioning, without a warrant, minors believe[d] to have been involved in unlawful conduct, Ill.Rev.Stat. ch. 38, pars. 805–5 & 805–6, yet no appellate court has concluded that a violation of these statutes in and of themselves require reversal. Considering the fact that the Illinois Constitution provides that "[e]very person shall find a certain remedy in the laws for all injuries and wrongs ..." Ill. Const. Art. I, sec. 12 this Court should grant leave to appeal in this case in order to address the issue of the appropriate remedy for the violation of the aforementioned statutes.

Pet. for Leave to Appeal at 19. As can be seen, this argument neither rests on nor refers to federal law. It is clear that with respect to the issue of police questioning, Lash sought a determination of state law remedies for state statutory violations, not the vindication of federal rights, in his petition for leave to appeal. Thus, although Lash argued to both state courts that the police engaged in coercive questioning, he did not present any federal constitutional claim to the Illinois Supreme Court "in a manner that fairly allow[ed] the court to consider its merits." *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354, 356 (7th Cir.1983) (en banc). Lash therefore waived this issue for purposes of Lash's present petition for habeas relief.

█ Lash also failed to fairly present his Fourteenth Amendment claim concerning the evidence of other crimes to either the Illinois Supreme Court or the Illinois appellate court. In his Illinois appellate court brief, Lash did not cite or mention the U.S. Constitution or any federal case law. Although the Illinois state cases that Lash cited pertain to the issue of other crimes evidence, each was decided on a state law basis. Neither the briefs nor the ultimate appellate court decision contain any federal constitutional analysis. The admission of evidence in a state proceeding is generally a matter of state law. *Gross v. Greer,* 773 F.2d 116, 119 (7th Cir.1985). The Court finds that Lash's federal claim concerning the admission of the other crimes evidence was not fairly presented to the Illinois appellate court and is waived.

Lash's brief for leave to appeal to the Illinois Supreme Court mirrors his appellate briefs on this issue, making the same arguments and citing the same cases. Once again, Lash did not mention the U.S. Constitution or federal case law, nor did he cite state cases that employ federal constitutional analysis. Thus, Lash again failed to fairly present this issue as a federal constitutional claim. The Court finds that Lash has procedurally defaulted on two of the three claims raised in his petition for habeas corpus.

## II. CONSIDERATION ON THE MERITS: IMPROPER REMARKS IN CLOSING

█ The State concedes that Lash's third argument in support of habeas corpus relief, his Fourteenth Amendment claim involving alleged prosecutorial misconduct based on improper remarks made during closing argument, is properly before the court. Lash specifically cited the Fourteenth Amendment of the United States Constitution (in addition to state law cases) in his appellate briefs and his petition for leave to appeal to the Illinois Supreme Court.

The alleged misconduct involved various statements during the prosecution's closing arguments to the effect that any sparseness in the State's evidence was because witnesses were afraid to come forward to testify, implying that Lash had caused this situation through intimidation. The first comment, which occurred during the State's initial closing argument, was that Hammond was "the only person who was willing to come in here to testify to what he saw." The remaining comments occurred during the State's rebuttal. The prosecution stated that evidence presented in court turns in part on "the courage of individuals to come forward and tell what they saw and the fear of other people who don't want to do that." The State then referred to police testimony that only a few people who witnessed the murder wanted to give their names.

The fourth and fifth allegedly improper comments occurred in response to the defense's closing argument that the persons whom the police contacted to obtain Lash's name as the perpetrator did not come into court to testify. The State again referred to police testimony that only a few people who witnessed the murder wanted to give their names, and then said, "I'm not suggesting to you that we can't get the whole story all the time because people are afraid, because people don't want to become involved." In the sixth comment, the prosecutor said, "I wish we had more eyewitnesses. That's not in our control. Some of it is in [the defendant's] control. Some of it is in the minds of the fears of the people on the street." *See Peo-*

*ple v. Lash,* 252 Ill.App.3d at 251–52, 191 Ill.Dec. at 760–61, 624 N.E.2d at 1138–39.

In reviewing this claim, the appellate court noted that it was improper for the prosecution to have suggested that the defendant caused potential witnesses' reluctance to testify. Examining the trial record carefully, however, the court found that the first five allegedly improper statements simply stated that witnesses were afraid to come forward during the investigation or testify at trial, statements of fact that were supported by police testimony. Only in the sixth statement did the State go beyond the bounds of the evidence, directly arguing that the scarcity of witnesses for the State was partially within Lash's control. The court held that this one statement did not rise to the level of reversible error. *Id.,* 252 Ill.App.3d at 252, 191 Ill.Dec. at 761, 624 N.E.2d at 1139.[4]

In a habeas corpus proceeding such as this one, this Court is limited to asking whether the state court's determination that no due process violation occurred was "an unreasonable application of[ ] clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The leading Supreme Court case on improper prosecutorial remarks is *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

In *Darden,* the Supreme Court considered the following factors as relevant to determining whether a petitioner has been deprived of a fair trial: (1) whether the prosecutor's arguments manipulated or misstated the evidence; (2) whether the remarks implicated specific rights of the accused, such as the right to remain silent; (3) whether the defense invited the response; (4) the instructions of the trial court; (5) the weight of the evidence against the petitioner; and (6) whether the defense was afforded an opportunity to rebut the remarks. *Swofford v. Detella,* 101 F.3d 1218, 1223 (7th Cir. 1996) (summarizing *Darden* ). Applying these standards, we cannot conclude that the state court's holding was unreasonable. The state court found that five of the six complained-of statements by the prosecution were supported by the record; only one "manipulated or misstated the evidence." The remarks did not implicate any specific rights of the defendant; rather, they simply cast Lash in a bad light. The defense invited some of these comments regarding witnesses' fear of coming forward by noting that the people who had identified Lash as the perpetrator had not come into court to testify. Finally, the weight of the other evidence against Lash was substantial, and thus the possibility that the prosecutor's lone improper remark tipped the scales toward conviction is remote. For all of these reasons, we find that the state appellate court's rejection of this claim comports with well-established federal law.

 Finally, in his reply brief in this Court, Lash also complained that four comments made by the prosecution during the rebuttal phase of closing arguments—to the effect that Lash had been sent out by someone to murder Towns—were not supported by the record, and constituted an improper attempt to create an inference of gang membership. This argument was waived by Lash's failure to raise it in his initial petition. Although this Court must construe pro se petitions for habeas corpus liberally, *Coulter v. Gramley,* 93 F.3d 394, 397 (7th Cir.1996), in this instance Lash expressly limited his claim involving prosecutorial misconduct to those comments suggesting witness intimidation. Under these circumstances, the Court need not consider an additional argument raised for the first time in a reply brief. *See Wilson v. Giesen,* 956 F.2d 738, 741 (7th Cir.1992) (pro se prisoner waived argument on appeal by failing to raise it until the reply brief); *Zambrana v. United States,* 790 F.Supp. 838, 843 (N.D.Ind.1992) ("Reply briefs are an improper vehicle for presenting new arguments" in a habeas proceeding). Moreover, this claim has been procedurally defaulted: while Lash's claim regarding the *intimidation*-related comments properly invoked the Fourteenth Amendment, with re-

---

4. The test applied by the appellate court was drawn from *People v. Mullen,* 141 Ill.2d 394, 404–08, 152 Ill.Dec. 535, 540–42, 566 N.E.2d 222, 227–29 (1990), an Illinois supreme court case citing both state and federal law.

gard to the comments that Lash was sent to kill Towns by someone else, none of the briefs, cases cited, or state court's opinion mentions federal law.

 Even if we were to entertain this belated argument, it would fare no better because it fails on the merits as well. Once again, the *Darden* test dictates whether the four statements at issue[5] were such serious instances of prosecutorial misconduct that they deprived Lash of a fair trial in violation of the Fourteenth Amendment. In Lash's favor, the statements were clearly not supported by the evidence, nor were they responses to any defense argument. Although the state appellate court suggested that these comments were proper because the prosecutor was merely trying to explain why Lash, a sixteen-year-old, might have committed the murder, the evidence from Lash's confession was that Towns was killed because he owed Lash a drug-related debt of $60. While this is not a particularly sympathetic explanation for Lash's actions, it was improper for the prosecutor to offer his own unsupported theory.

Nevertheless, this Court cannot conclude that Lash was deprived of a fair trial because of these comments. We concur with the state appellate court that the great weight of the evidence against Lash came from his own confession to the murder and the testimony of Hammond, the eyewitness, which corroborated the facts to which Lash confessed. The weight of this evidence is such that the jury could easily have found Lash guilty even if none of the prosecutorial misstatements had been made. The requirements of due process are met unless the improper statements " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden,* 477 U.S. at 181, 106 S.Ct. at 2471 (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)). Accordingly, we find that the state court's decision was not "contrary to, or an unreasonable application of, clearly established Federal law," 28

U.S.C. § 2254(d)(1), and deny on the merits Lash's habeas claim complaining that improper prosecutorial comments during closing arguments deprived him of due process.

## CONCLUSION

After careful review, the Court concludes that Lash's trial and conviction did not violate the constitution in any manner that is cognizable upon a petition for habeas corpus. As the Seventh Circuit explains, the federal courts "are not to offer a further tier of appellate review[, but] to determine only whether [the defendant] was deprived of any of his federal rights that can be enforced in a federal habeas corpus proceeding." *Tyson v. Trigg,* 50 F.3d 436, 438 (7th Cir.1995). For all of the foregoing reasons, the Court denies Lash's petition for a writ of habeas corpus and dismisses this action.

---

5. Lash loosely describes these statements as telling the jury that "someone put Anthony Lash up to committing this crime or someone wanted Mr. Towns dead or Anthony was sent out to commit this crime." The exact wording of the statements does not appear in the record we received, although citations to the trial transcript are given.