Dwayne COULTER, Petitioner–Appellant,

v.

**Richard GRAMLEY and Roland W. Burris, Respondents–Appellees.**

No. 93–2621.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 4, 1996.

Decided Aug. 21, 1996.

---

Christine Reneé Norgle (argued), Chicago, IL, for Petitioner-Appellant.

Michael A. Hurst (argued), Office of the Attorney General, Criminal Appeals Division, Chicago, IL, for Respondents-Appellees.

Before ROVNER, DIANE P. WOOD, and EVANS, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Dwayne Coulter, an African–American, was convicted by an Illinois jury of the first degree murder of Michael Ridges, a white police officer, and conspiracy to murder another man. During the jury selection process for Coulter's trial, the State used nine of its ten peremptory challenges to exclude African-Americans from the jury. Coulter claims here, in his petition under 28 U.S.C. § 2254, that the State's exercise of its challenges violated the rule of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Believing that Coulter had procedurally defaulted on the particular *Batson* claim presented in his § 2254 petition, the district court dismissed it with prejudice. Because this case turns on the history of Coulter's litigation in the state courts, we describe that in some detail.

Upon completion of the initial jury selection process in the Cook County Circuit Court, the court selected a panel of jurors. The actual jury included three African–Americans and two African–American alternates. Coulter moved for a mistrial because the State had exercised its first six peremptory challenges to exclude African–Americans. The trial court denied this motion, as well as two subsequent motions also claiming discriminatory jury selection. The trial took place, the jury convicted Coulter, and he was sentenced to imprisonment for his natural life. Coulter then appealed his conviction to the Illinois Appellate Court, claiming as one ground for relief the State's use of its peremptory challenges in violation of *Batson.* On direct review, that court issued an order remanding the case to the trial court for clarification of the record concerning the jury selection procedure and for any further proceedings that might be necessary. On remand, the trial court decided not to hold a hearing, but instead to proceed on the basis of only written arguments. Without explaining itself in a written opinion, the court found that Coulter had failed to establish a *prima facie* case of a *Batson* violation, before Coulter had an opportunity to respond to the State's submission explaining its reasons for the strikes. Coulter then filed a motion to reconsider that ruling in which he responded to the State's arguments. The trial court denied that motion.

The Illinois Appellate Court found that the trial court's procedure on remand had been

"less than ideal," and that the record indicated that the trial court exhibited unjustified "open hostility" toward Coulter, but it nevertheless concluded that the trial court's hostility did not amount to prejudgment of the issue on remand. *People v. Coulter*, 230 Ill.App.3d 209, 171 Ill.Dec. 643, 652, 594 N.E.2d 1163, 1172 (1992). The appellate court also held that Coulter had indeed established a *prima facie* case of discriminatory use of peremptory challenges, but that the State had come forward with reasonably specific, legitimate, and race-neutral explanations for striking the potential jurors. *Id.* 171 Ill.Dec. at 656, 594 N.E.2d at 1176.

The Illinois Appellate Court's opinion went into considerable detail in its discussion of the *Batson* claim, both on the law and on the facts. Juror by juror, it addressed the State's reasons for its strikes. See *id.* 171 Ill.Dec. at 654 , 594 N.E.2d at 1174–1176. Prospective juror Melanie Pinkins, for example, was excluded because her mother worked at the same hospital as a medical expert named as a possible defense witness. Yet, according to one of Coulter's *pro se* filings in this court, the State did not challenge a white juror whose wife worked at the same hospital. Prospective juror Marcia Adams was excluded because she was a licensed practical nurse, on the theory that medical testimony on Coulter's insanity defense was to be presented. There was no evidence that Adams, who had one year of training and worked with the elderly, had any particular knowledge about mental health issues. The State asked no other jurors questions about their knowledge in this area, and it did not exclude a juror whose wife was a nurse, or another juror who had had previous contacts with psychiatrists due to her father's treatment for a breakdown. Prospective juror Melvin Ingess was excluded because he had fathered children by two different women and was unemployed. The State did not ask any of the non-minority jurors about their paternity of children, and it did not exclude a white juror with a similar record of employment.

Following the appellate court's decision, Coulter filed a timely motion for leave to appeal to the Illinois Supreme Court, in which he attacked the Illinois Appellate Court's finding of race-neutral reasons for the strikes. He specifically claimed that the State had offered pretextual reasons as to three venirepersons. He did not argue in this petition that the Illinois Appellate Court erred in ruling that the trial court was not impermissibly biased in its handling of the remand. Throughout his state court appeals, Coulter was represented by counsel. In an order dated October 7, 1992, the Illinois Supreme Court denied the motion.

On February 3, 1993, Coulter filed the *pro se* § 2254 petition that is the subject of this appeal. The form used by the Northern District of Illinois for these filings provides space to list each ground for the petition, with room to set forth supporting facts. Ground Three read as follows, in its entirety:

Ground three: Conviction obtained by the purposeful discrimination against African–Americans during jury selection.

Supporting FACTS (tell your story *briefly* without citing cases or law): Denial of *Batson* hearing was a violation of Petitioners [sic] rights, because the subsequent hearing was procedurally defective, heald [sic] by a biased court which had already ruled on the same issues against Petitioner. Trail [sic] judge was openly hostile to both Petitioner and Petitioners [sic] attorney during *Batson* hearing, refused to remand Petitioner so that he could consult with his attorney, who had no knowledge of the *Batson* procedure, and had not been involved in the appeal which resulted in hearing.

The district court construed this part of the petition to raise only claims about the quality of the *Batson* hearing. The judge believed that Coulter had failed to present to the federal court the specific *Batson* claim relating to the proper standards to apply when judging peremptory challenges that he had raised before the Illinois Supreme Court. She accordingly found that whatever *Batson* claims he had presented were procedurally defaulted. Finding no merit in Coulter's other grounds for relief, she dismissed the petition with prejudice.

Before this court, Coulter raises only his substantive *Batson* claims. He asserts first

that the trial court erred in concluding that he had procedurally defaulted this claim. In the alternative, he argues that even if the procedural default finding was correct, he can show cause (his I.Q. of 67 and a history of other mental problems) and prejudice that should have excused any default. Finally, he argues that he has a meritorious issue, which the district court should have reviewed. The State responds that Coulter failed properly to raise his claim in the state court proceedings, and that he cannot show cause and prejudice from his mild mental retardation and the likelihood of error in the underlying proceedings.

It is important to be clear about when and where Coulter raised his substantive *Batson* claim, because this case does not present the usual pattern of procedural default. It is plain from a reading of the Illinois Appellate Court's second opinion and Coulter's motion for leave to appeal to the Illinois Supreme Court that he presented this *Batson* claim to the Illinois courts. The Illinois Appellate Court's decision devotes almost five pages of discussion to the issue, and the motion for leave addresses the question whether the State's reasons for its challenges were pretextual or not. Coulter's problems arose, instead, when he wrote his *pro se* petition for habeas corpus for the federal district court. If he had stopped with the heading in Ground Three, no one would have doubted that he was carrying forward his substantive *Batson* claim to the federal court. However, his statement of supporting facts addresses only the quality of the *Batson* hearing he received in the state courts: a claim that he did not present to the Illinois Supreme Court in his motion for leave to appeal, and a claim he is not pursuing before this court. It thus makes no difference at this point whether he procedurally defaulted his claim about the *Batson* hearing or the judge's alleged bias. Compare *Hogan v. McBride*, 74 F.3d 144, 147 (7th Cir.1996).

The question instead is whether his *pro se* petition was adequate to raise the core *Batson* challenge in his § 2254 petition. Although we agree that the petition is not a model of legal draftsmanship, it is important to construe *pro se* filings liberally. See

*Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996). The State, to its credit, followed this rule before the district court and argued both the merits of the *Batson* claim and the issue of trial court bias. At oral argument before this court, the State candidly admitted that it did not argue procedural default before the district court because it believed that Ground Three contained a *Batson* claim similar to the one raised before the Illinois Supreme Court. We agree. Read generously, Coulter raised two issues in Ground Three of his petition, one of which was properly presented to the state courts (the *Batson* claim itself) and the other of which may have been procedurally defaulted (the hearing claim).

We therefore conclude that further proceedings are required on Coulter's claim that his conviction was obtained in violation of the Fourteenth Amendment by the State's purposeful exclusion of African–Americans from the jury. We note in this connection that the exercise of even a single peremptory challenge that intentionally discriminates on the basis of race violates the Fourteenth Amendment. *Splunge v. Clark*, 960 F.2d 705, 709 (7th Cir.1992). The judgment is therefore REVERSED and the case is REMANDED for further proceedings.