No. 95–1881.

United States Court of Appeals, Sixth Circuit.

Argued May 20, 1996.

Decided Nov. 14, 1996.

**Noreen McBRIDE, Plaintiff–Appellee,**

v.

**VILLAGE OF MICHIANA, Defendant,**

Elizabeth O'Donnell, individually and as Clerk of the Village of Michiana and as former Assistant Clerk of the Village of Michiana and as former President of the Village of Michiana and as former member and as former President Pro–Tem of the Village Council of the Village of Michiana; Kathleen Roberts, individually and as former President of the Village of Michiana and as a member and former President Pro–Tem of the Village Council of the Village of Michiana; Kenneth Books, individually and as a Police Officer of the Village of Michiana; Marianne Gosswiller, individually and as former Chairperson of the Zoning, Planning and Environmental Commission of the Village of Michiana; Mary Ann Johnson, individually and as former member of the Village Council of the Village of Michiana and as former member of the Zoning, Planning and Environmental Commission of the Village of Michiana; Gertrude Peterson, individually and as former Clerk of the Village of Michiana; Richard Gosswiller, individually and as former President of the Village of Michiana and as former member of the Village Council of the Village of Michiana; Harvey Kemp,

Tat Parish, Steven L. Wolfram (argued and briefed), Watervliet, MI, for Plaintiff–Appellee.

Mary Massaron Ross (argued and briefed), Plunkett & Cooney, Detroit, MI, for Defendants–Appellants.

Before: DAUGHTREY and MOORE, Circuit Judges; FORESTER,* District Judge.

DAUGHTREY, Circuit Judge.

Present and former officials of the Village of Michiana appeal from the district court's denial of their requests for qualified immunity in an action premised upon 42 U.S.C. § 1983. In the underlying proceeding, Noreen McBride, a reporter for various newspapers and other media outlets, claimed that the defendants infringed upon her clearly established constitutional right to be free from retaliation for exercising her First Amendment freedoms. We agree with the district court that the right of a reporter to be free from reprisals for relating news items about elected leaders was clearly established by the time the challenged acts occurred. Nevertheless, we also conclude that some of the alleged retaliatory acts may themselves be protected by the First Amendment and, therefore, cannot cause compensable, constitutional injuries. We thus AFFIRM the denial of qualified immunity to the defendants and REMAND this matter to the district court for further consideration of the claims raised by McBride.

## I.

At all times relevant to this dispute, McBride worked in the Southern Michigan–Northern Indiana area for several news organizations, including the *New Buffalo Times*, the *South Bend Tribune*, and radio station WEFM. As part of her duties, she filed stories concerning the political happenings in the Village of Michiana in Berrien County, Michigan. Some of those stories discussed the mishandling of public funds, violations of the Michigan Open Meetings Act, and efforts by village officials to encourage non-residents to vote in village elections.

* The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

In her § 1983 complaint, McBride alleged that the government defendants then undertook a series of actions between the fall of 1989 and 1992 in retaliation for her less-than-glowing accounts of representative democracy in Southern Michigan. Specifically, she charged that certain defendants (Kenneth Books, a Michiana police officer, Marianne Gosswiller, a member of the Michiana Village Council, and Kathleen Roberts, the president pro tem of the Michiana Village Council) repeatedly contacted her employers and urged them not to allow McBride to report on Michiana political news. McBride also alleged that Gosswiller and Roberts, together with Mary Ann Johnson, another member of the village council, threatened to boycott the *New Buffalo Times* if that publication did not remove McBride from her political beat, and actually purchased an advertisement in a competing paper urging readers to cancel their subscriptions to the *New Buffalo Times*. Furthermore, Roberts contacted a potential employer of McBride and strongly suggested that the company not hire McBride.

On another occasion, with council members present, Officer Books called the *New Buffalo Times* and requested that McBride not be assigned to cover council proceedings, saying that he could not ensure her safety if she appeared before that body. When McBride did, in fact, appear to report on the governmental activities, Books and Gertrude Peterson, the former clerk of the council, ordered her to leave the press table set up in the council chambers, while Carol Nagy, another council member, informed the general public that the meeting would not begin as long as McBride remained at the table. Books then threatened McBride with physical removal if she did not comply with the directive. Before the next council meeting, moreover, the entire press table was removed from the premises.

McBride alleged as well other instances of possible retaliation by members of the Michiana government. For instance, she claimed that Roberts, Marianne Gosswiller, Richard Gosswiller, the former village president, and Elizabeth O'Donnell, a local governmental office-holder, verbally abused her during council meetings, that O'Donnell instructed village employees not to speak with McBride, and that Marianne Gosswiller, Peterson, and O'Donnell violated the Freedom of Information Act of Michigan by, among other things, improperly refusing to produce documents for McBride or charging her inflated prices for document requests. She also insisted that Richard Gosswiller intentionally destroyed government documents in order to deny her access to them.

Finally, McBride complained of certain actions taken by Harvey Kemp who served both as the Michiana Building Inspector and as a member of the Zoning, Planning, and Environmental Commission. She alleged that at one meeting of the commission, Kemp required all members of the media to stand and identify themselves before the commission members and the general public. Furthermore, she claimed that two months later, Kemp hurled a chair at McBride and other members of the press at a public meeting.

As a result of these acts by village officials, McBride filed suit against the defendants pursuant to 42 U.S.C. § 1983, alleging interference with her rights of free speech and free press, and retaliation for the attempted exercise of those freedoms. The district court granted the defendants' motion to dismiss the action, however, after finding that McBride failed to set forth a claim recognized under the United States Constitution. Specifically, the court determined that McBride had not been defamed, had never been denied access to the public meetings, and had no constitutional right to sit at a press table or to interview public employees.

On appeal, we reversed the district court, noting that the harassment alleged against the village officials was "sufficient to state a cause of action for retaliation" for exercise of a constitutionally protected activity. After remand, the defendants then filed a motion for summary judgment, this time seeking dismissal of McBride's claims on the basis of qualified immunity because of their belief that "there was no clearly established law that their alleged actions were violative of the Plaintiff's constitutional rights." The district court rejected that argument, however, and ruled that there was indeed a clearly

established right to be free from retaliation for exercise of one's constitutional rights as a reporter at the time of the events catalogued by McBride.

## II.

As this case once again wends its way before us, the defendants insist that although such a right may now be clearly established, from 1989 until 1992, the operative dates between which the actions at issue occurred, the law in this regard was far from settled. The defendants thus argue that if they are correct in their assertion, they cannot be held responsible for the violation of what were still amorphous constitutional principles.

### A.

Because applications of the doctrine of qualified immunity are questions of law, we review the district court's determinations on such matters *de novo. Thomas v. Whalen,* 51 F.3d 1285, 1289 (6th Cir.) (citing *Garvie v. Jackson,* 845 F.2d 647, 649 (6th Cir. 1988); *Long v. Norris,* 929 F.2d 1111, 1114 (6th Cir.), *cert. denied sub nom., Jones v. Long,* 502 U.S. 863, 112 S.Ct. 187, 116 L.Ed.2d 148 (1991)), *cert. denied,* —— U.S. ——, 116 S.Ct. 518, 133 L.Ed.2d 426 (1995). As a general principle, "government officials performing discretionary functions enjoy qualified immunity from liability for performance of their official duties." *Thomas v. Whalen,* 51 F.3d at 1289. Whether such an official may nevertheless be held personally liable for an allegedly unlawful action involves an inquiry into the "objective legal reasonableness" of the action. *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982). If the constitutional right "the government official allegedly violated was clearly established at the time of the challenged conduct, 'the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.'" *Thomas,* 51 F.3d at 1289 (quoting *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738).

When determining whether a right is "clearly established," we "look first to deci-

sions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits." *Daugherty v. Campbell,* 935 F.2d 780, 784 (6th Cir.1991), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). As the Supreme Court explained, however, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (Citations omitted.)

### B.

Despite the above-quoted language of *Anderson,* the defendants do argue in their brief that they are entitled to qualified immunity in this case simply because there is "no Supreme Court or Sixth Circuit authority ... applying retaliation principles in the context of public officials' dealings with a member of the press." Such a dogmatic claim is unjustified. As the Seventh Circuit recognized in *K.H. Through Murphy v. Morgan,* 914 F.2d 846, 851 (7th Cir.1990):

The easiest cases don't even arise. There has never been a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages liability because no previous case had found liability in those circumstances.

*See also McCloud v. Testa,* 97 F.3d 1536 (6th Cir.1996) (the lack of specific Supreme Court or Sixth Circuit precedent "is not a sufficient condition for concluding that the law is unclear on the subject and so qualified immunity must be granted to the defendant").

Simply because no government official has heretofore deemed it acceptable to retaliate against and threaten a reporter for relating the activities of a local governmental body does not mean that the right of a member of the press to be free from such retaliation has not been "clearly established." Both the Su-

preme Court and this court have, in fact, consistently recognized "that retaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment." *Fraternal Order of Police Lodge No. 121, Inc. v. City of Hobart,* 864 F.2d 551, 553 (7th Cir.1988).

In *Perry v. Sindermann,* 408 U.S. 593, 598, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972), for example, the Supreme Court ruled that reprisals against a state university teacher, even a non-tenured professor, for exercise of constitutionally protected rights are improper. Even though individuals may have no "right" to certain government "benefits," those benefits may not be denied because of constitutionally protected speech or associations. *Id.* at 597, 92 S.Ct. at 2697–98. *See also Mt. Healthy City Sch. Dist. v. Doyle,* 429 U.S. 274, 283–84, 97 S.Ct. 568, 574–75, 50 L.Ed.2d 471 (1977) (government actor may not retaliate against individual for exercise of constitutionally protected First Amendment freedoms).

In *Zilich v. Longo,* 34 F.3d 359, 365 (6th Cir.1994), *cert. denied,* —— U. S. ——, 115 S.Ct. 1400, 131 L.Ed.2d 288 (1995), this court then stated that the "right of free speech was 'clearly established' for qualified immunity purposes. *The law is well settled in this Circuit that retaliation under color of law for the exercise of First Amendment rights is unconstitutional . . . .*" (Emphasis added.) It is true that *Zilich* was decided *after* the completion of all acts of which McBride complains. In our *Zilich* opinion, however, we referenced other cases, most of which were decided *prior to* some, if not all, of the retaliatory acts alleged in this matter. In each of those cases, the court recognized the unconstitutionality of reprisals seeking to punish an individual for speech protected by the federal constitution. *See Boger v. Wayne County,* 950 F.2d 316 (6th Cir.1991) (recognizing that county employee may not be transferred in retaliation for exercise of free speech rights); *Reichert v. Draud,* 701 F.2d 1168 (6th Cir.1983) (recognizing that school board may not change teacher's class assignments in retaliation for exercise of rights of free speech and free association); *Hildebrand v. Board of Trustees of Michigan State Univ.,* 662 F.2d 439 (6th Cir.1981) (recognizing that teacher may not be denied tenure solely in retaliation for exercise of First Amendment freedoms), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982); *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) (recognizing that prison officials may not retaliate against prisoner for seeking access to the federal courts).

The possible scenarios involving retaliatory treatment of persons engaged in protected speech are too numerous to begin to list. Moreover, it is not essential that a Supreme Court or Sixth Circuit case discuss each of those imaginable possibilities before finding that the right to be free from retaliation for exercise of First Amendment freedoms is clearly established. At the time of the alleged retaliatory actions, Supreme Court and Sixth Circuit precedent had clearly established that retaliation aimed at chilling fundamental rights was improper. Although no Supreme Court or Sixth Circuit decisions had, at that time, applied time-honored First Amendment principles to a situation *specifically* involving governmental retaliation against a news reporter, relevant pre-existing case law made the illegality of such retaliation apparent.

The consistent condemnation by the Supreme Court and by this court of all governmental reprisals against such individuals for improper purposes clearly established that, in 1989 or 1992, as in 1994, "[n]o reasonable official could possibly believe that it is constitutionally permissible to retaliate against a political opponent with physical threats, harassment and violence." *Zilich,* 34 F.3d at 365. Thus, a reasonable governmental official committing those acts during the time period relevant to this litigation, would have understood that what was being done violated McBride's First Amendment rights.

### III.

Consequently, to the extent that the defendants in this matter improperly retaliated against McBride for the exercise of her First Amendment right to report to the citizenry about political matters of public concern, those defendants were not entitled to quali-

fied immunity from suit. It is, however, only improper acts of retaliation that are forbidden by our First Amendment jurisprudence discussed in this opinion. The proper exercise by the defendants of their own free speech rights cannot serve as the basis for imposition of liability upon those individuals. Upon remand, therefore, the district court should differentiate between those alleged improprieties by the defendants that constitute protected expressions of the defendants' own ideas and positions and those allegations that involve intimidation, harassment, and retribution directed toward McBride solely to punish her for choosing to exercise one of the basic freedoms upon which our society is founded.

## IV.

The district court's denial of qualified immunity to the governmental defendants is AFFIRMED and this matter is REMANDED for further proceedings in accordance with this opinion.