In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1079

RIXSON M. PERRY,

Plaintiff-Appellant,

v.

MICHAEL F. SHEAHAN, Sheriff of Cook County,
EUGENE SACCO, Assistant Chief, Cook County
Sheriff's Office, ROBERT SHERMAN, Sergeant,
Cook County Sheriff's Office, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 2313--James F. Holderman, Judge.

Argued September 27, 1999--Decided August 2, 2000

No. 99-2741

RIXSON M. PERRY,

Plaintiff-Appellant,

v.

MICHAEL F. SHEAHAN, Sheriff of Cook County,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 1164--James F. Holderman, Judge.

Argued April 14, 2000--Decided August 2, 2000

Before POSNER, RIPPLE, and ROVNER, Circuit Judges.

ROVNER, Circuit Judge. Rixson M. Perry sued
Michael F. Sheahan, the Sheriff of Cook County,
and some of Sheahan's employees under 42 U.S.C.
sec. 1983, alleging that they violated his

constitutional rights in seizing firearms and other items from his apartment. The defendants filed a motion to dismiss arguing that Perry lacked standing to seek declaratory and injunctive relief, and that qualified immunity shielded them from any damages. The district court granted their motion, and Perry appeals.

On a motion to dismiss we accept all well-pleaded allegations in the complaint as true, construing ambiguities in favor of the plaintiff. Curtis v. Bembenek, 48 F.3d 281, 283 (7th Cir. 1995). According to the complaint, the seizure occurred during an aborted eviction. On February 23, 1998, two Cook County Sheriff deputies forcibly entered Rixson Perry's apartment for the purpose of executing an eviction order. Perry had never received notice of the action for possession, and contacted his attorney who sought an emergency stay of the eviction. While Perry awaited the stay, Sergeant Sherman and Deputy Sheriff Mak arrived from the Cook County Sheriff's Office. The stay was granted a couple of hours later. At that point, the first deputy sheriffs had been in the apartment for three hours, and Sherman and Mak had been there for ninety minutes. Perry and Sherman subsequently spoke with Assistant Chief Sacco by phone, and Sacco ordered that the eviction be halted. Sacco further stated, however, that the Sheriff's office had a policy of seizing any firearms found in the course of evictions and he directed Sherman and Mak to seize Perry's firearms pursuant to that procedure. Over Perry's objections, defendants Sherman and Mak then removed: "several firearms, most of which were in a disassembled non-functioning state, awaiting repair or restoration, a sizeable quantity of firearms parts, ammunition and accessories, several knives, most of which were small, folding pocket knives and some police equipment, including handcuffs and a baton, which were on a wall plaque commemorating Perry's early police service." Complaint at 23.

Approximately two months later, Perry had still not recovered his possessions from the Sheriff's office, although no one contests that they were lawfully owned by him. On April 15, 1998, he filed a complaint under 42 U.S.C. sec. 1983 against Sheahan in his official capacity and against Sacco, Sherman and Mak in their individual capacities (Perry I). He sought: (1) a declaration that the policy of seizing firearms during an eviction without any predeprivation process was a violation of due process; (2) an injunction prohibiting implementation of that seizure policy; (3) an order requiring Sheahan to return the property to Perry; and (4) damages against Sacco, Sherman, and Mak for their role in

the seizure. After Perry filed a motion for summary judgment, the defendants agreed to return the confiscated property, and the court entered an order on June 29, 1998 requiring the return of the property by July 10, 1998. Perry recovered property pursuant to that order, but contends that the defendants still possess some seized property. The district court subsequently granted the defendants' motion to dismiss the remaining claims, holding that Perry lacked standing to seek declaratory and injunctive relief, and that qualified immunity prevented the imposition of damages against Sherman, Sacco, and Mak. Perry appealed the court's ruling dismissing those claims.

While the appeal was pending in this court, Perry instituted yet another case in the district court against the defendants (Perry II), raising identical issues. Perry II differed from Perry I only in that it contained a claim for damages against Sheahan in his individual capacity, and it contained the additional factual allegations that Perry was a tenant in Cook County and therefore subject to eviction again. The district court dismissed this case as well, holding that the claims for damages were barred by the doctrine of res judicata, and that the complaint still failed to establish an injury-in-fact sufficient to confer standing for declaratory and injunctive relief. Because our resolution of Perry I disposes of Perry II, we will first address the Perry I appeal.

I.
A.

As Perry is aware from a prior case in this court, we review de novo an order dismissing a case for lack of standing. Perry v. Village of Arlington Heights, 186 F.3d 826, 827 (7th Cir. 1999). The standing requirement inheres in Article III of the Constitution, which requires that a party seeking to invoke the jurisdiction of the federal courts must present an "actual case or controversy." City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983). The purpose of that requirement is to ensure that the plaintiffs have "'a personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." Id. (citations omitted). To ensure that personal stake, a plaintiff seeking to invoke federal court jurisdiction must demonstrate: (1) an injury that is concrete, particularized, and actual or imminent rather than conjectural or hypothetical; (2) a causal connection between the injury and the challenged conduct, such that the injury may be fairly

traceable to that conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Perry, 186 F.3d at 829; American Federation of Govt. Employees v. Cohen, 171 F.3d 460, 466 (7th Cir. 1999). Perry cannot meet that test here.

As the district court recognized, this case is analogous to that presented in City of Los Angeles v. Lyons, 461 U.S. 95 (1983). In that case, Lyons sued the City of Los Angeles and certain of its police officers, alleging that the officers, without provocation, subjected him to a chokehold after stopping him for a traffic violation. He sought damages and an injunction barring the use of chokeholds except where a suspect threatens the use of deadly force. Although recognizing that Lyons had standing to seek damages, the Supreme Court held that he lacked standing for injunctive relief. The Court held that "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" Id. at 102, quoting O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974). Because Lyons could not show a realistic threat that he would be subjected to a chokehold in the future, he possessed standing only to seek damages for the past conduct. In other words, Lyons lacked a personal stake in the future application of the chokehold, because he could not demonstrate a realistic threat that he would be again subjected to a chokehold.

Perry's situation parallels that in Lyons because Perry has alleged only past injury, but cannot demonstrate a realistic threat that he would be the subject of another forcible eviction in Cook County that would result in the seizure of his property. In fact, Perry makes no argument in the appeal of Perry I that he faces that future threat. He argues instead that he has standing to seek prospective relief because defendant Sheahan still possesses some of his property that was seized during the eviction. Although poorly articulated, his argument appears be that his past exposure to illegal conduct establishes a present case or controversy because it is accompanied by continuing, present adverse effects, thus invoking the exception recognized in O'Shea and Lyons.

Even if we were to view the retention of some of his property as a continuing, present adverse effect, however, Perry is no closer to establishing standing because an injunction prohibiting future seizures in the course of evictions or a declaration that the policy itself

is unconstitutional would do nothing to redress that ongoing injury. The equitable relief sought by Perry does not address the property currently held, but merely seeks a declaration that the policy is unconstitutional and a prohibition of future seizures under the eviction policy. In fact, Perry requested and received relief for the injury caused by the continued retention of his property in the form of an order from the district court requiring the return of his property. Only damages, not an injunction or a declaratory judgment relating to the future use of the policy, will provide further relief if the property is not returned. See Bryant v. Cheney, 924 F.2d 525, 529 (4th Cir. 1991) (injunctive powers of the federal courts are broad, but "Article III simply precludes their empty use to enjoin the conjectural or declare the fully repaired broken.") Thus, Perry cannot meet the third part of the standing analysis articulated above, which requires a likelihood that the injury can be redressed by a favorable decision. Standing does not automatically attach once an ongoing injury is identified. As the Supreme Court has recognized, "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 107 (1998). Because an injunction or declaratory judgment addressing future seizures will not redress his ongoing injury, he lacks the personal stake in the outcome that provides standing.

A similar attempt to bootstrap standing was rejected in Natural Resources Defense Council v. Pena, 147 F.3d 1012, 1014 (D.C. Cir. 1998). There, the district court had granted a permanent injunction prohibiting the Department of Energy from using a report prepared by a committee organized in violation of the Federal Advisory Committee Act (FACA). The D.C. Circuit reversed and remanded the case because it "had serious doubts" whether the use injunction redressed any of the claimed injuries. Id. The injuries asserted in that case were the exclusion from past committee meetings and the denial of access to Committee records and documents. Id. at 1021. The injunction, however, would not give the appellees access to documents and future meetings and in fact the Committee had been dissolved and would no longer generate reports. Id. Accordingly, the court held that the redressability element was not met, noting: "[t]hat the appellees may have sustained a continuing injury by virtue of the Department's ongoing denial of FACA access to Committee documents and records cannot support their standing to sue for an injunction that does not

itself address the access issue." Id. at 1022.

Perry similarly claims an ongoing injury unrelated to the relief sought. That is insufficient to establish standing for injunctive and declaratory relief under Article III. See also City of Houston, Tex. v. Department of Housing & Urban Development, 24 F.3d 1421, 1429 (D.C. Cir. 1994) (plaintiff cannot obtain declaratory relief in challenge to ongoing agency policy if plaintiff's specific claim is otherwise fully resolved and plaintiff lacks standing to attack future applications of the policy). In fact, Perry's case illustrates the purpose served by the standing requirements. He would be a particularly poor litigant on this issue because he has made no showing that he is threatened with a future eviction, and his eviction was unusual in that the seizure occurred after the eviction was aborted. Therefore, the likely justifications for the policy--the safety concerns with literally placing firearms in the street--were not even applicable to his eviction. The district court did not err in holding that Perry lacked standing to pursue injunctive and declaratory relief in Perry I.

B.

We are left, then, with Perry's claims for damages against Sacco, Sherman, and Mak in their individual capacities. The district court dismissed those claims as well, concluding that plaintiff "failed to show that defendants' seizure of his firearms during the eviction violated a clearly established constitutional right." Dist. Ct. Op. at 7.

Our analysis begins with the well-established proposition that government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Knox v. McGinnis, 998 F.2d 1405, 1409 (7th Cir. 1993). Perry thus has the burden of demonstrating that the defendants violated a constitutional right that was clearly established at the time of the incident in February 1998. Conner v. Reinhard, 847 F.2d 384, 388 (7th Cir. 1988). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted). Thus, Perry need not identify a case involving the exact fact pattern at bar, but must be able to identify case

law in a closely analogous area. Conner, 847 F.2d at 388.

The district court held that there was no established constitutional right against the seizure of property during an eviction. That analysis, however, assumes a factual scenario not present here. Although the defendants entered the home for the purpose of effecting an eviction, the seizure of the firearms occurred only after the eviction was stayed pursuant to an order of the court. Therefore, the defendants could not reasonably believe that they were seizing the firearms pursuant to an order of eviction. The order of eviction justified their initial entrance into the apartment, but provides no cover for actions undertaken after they were informed of the court-ordered stay. The question, then, is whether they could reasonably have believed that the seizure was nevertheless constitutional.

Perry does a poor job of articulating the constitutional theory under which he is challenging the seizure, but appears to rely on the Fifth and Fourteenth Amendments for his claim. We have repeatedly held, however, that "a complaint need not identify a legal theory, and specifying an incorrect theory is not fatal." Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992). Moreover, Perry acted pro se in the district court, and thus we must construe his pleadings liberally. Coulter v. Gramley, 93 F.3d 394, 397 (7th Cir. 1996). His complaint unambiguously sets forth a challenge to the seizure of his property by government officials. That language raises due process and Fourth Amendment concerns, which the district court undoubtedly would have addressed at more length if it had not been under the mistaken impression that the seizure occurred during the eviction. On appeal, Perry properly argues that the district court erred in presuming that the seizure occurred during the eviction. Because the conduct alleged in the complaint would violate the clearly-established right against unreasonable seizures, we reverse the district court's dismissal of the damages claims on the grounds of qualified immunity.

It is beyond question that the Fourth Amendment applies to the seizure of the firearms in this case. In Soldal v. Cook County, Illinois, 506 U.S. 56, 61 (1992), the Supreme Court noted that a seizure of property occurs "when there is some meaningful interference with an individual's possessor interests in that property." (citations omitted). That standard is certainly met by the physical removal of the property and the retention of that property by the defendants.

Soldal further held that "the right against unreasonable seizures would be no less transgressed if the seizure of the house was undertaken to collect evidence, verify compliance with a housing regulation, effect an eviction by the police, or on a whim, for no reason at all." Id. at 69. Thus, regardless of whether the seizure occurred during an eviction or, as here, after an eviction was aborted, clearly established law required that the seizure must comport with the Fourth Amendment. The critical issue for Fourth Amendment purposes is whether the seizure was reasonable. Id. at 61-62. Of course, if the seizure were undertaken pursuant to a court order of eviction, a showing of unreasonableness would be "a laborious task indeed," although not an impossible one. Id. at 71, citing Specht v. Jensen, 832 F.2d 1516 (10th Cir. 1987) (officers who conducted search of home under state court order of possession and writ of assistance held liable for violation of Fourth Amendment). Here, the defendants do not have the benefit of acting pursuant to a court order because the eviction was stayed at the time of the seizure. We must determine, then, whether the defendants could have reasonably believed that the seizure was constitutional even absent a court order authorizing the seizure and absent the justification that the firearms could present a danger to the public if placed in the street.

The general rule is that searches and seizures in a home without a warrant are presumptively unreasonable. Arizona v. Hicks, 480 U.S. 321, 326-27 (1987). There are, of course, a number of well-recognized exceptions to the warrant requirement but none appear to fit this case. The defendants argue simply that no established law prevented the seizure of personal property whether during an eviction or even after they were informed that the eviction was stayed. That position is stunning, and ignores virtually all Fourth Amendment law. At its extreme, it would allow officers, once lawfully in a home, to seize any property with impunity./1 At a minimum, it would give officers carte blanche to conduct searches and seizures within a home even after an eviction is called off. That directly contradicts Soldal's recognition that Fourth Amendment limitations apply even during an eviction, let alone after an eviction is stayed.

We add that no exception to the warrant requirement is apparent from the facts. The most obvious potential argument is the plain view exception. That exception, however, is met only if: (1) the deputy did not violate the Fourth Amendment in arriving at the place from which the items were plainly viewed; (2) the items were in plain view and their incriminating character was

"immediately apparent;" and (3) the deputies had a lawful right of access to the object itself. Horton v. California, 496 U.S. 128, 136-37 (1990). Because the deputies lawfully entered and searched the premises pursuant to a then-valid eviction order, their discovery of the weapons in the first place was lawful. The analysis fails, however, on the second prong because no facts support a finding that the officers possessed probable cause to believe the items seized from the house were linked to criminal activity. See United States v. Bruce, 109 F.3d 323, 328 (7th Cir. 1997). Because all of the weapons seized can be lawfully possessed, the deputies could not reasonably presume that they were of an incriminating character. Thus, in Bruce we recognized that shotgun shells are not inherently incriminating because they can be lawfully possessed, but that they may assume an incriminating or suspicious nature in connection with the crime being investigated. Id. Here, there was no crime being investigated, and thus no probable cause to believe that the weapons were linked to criminal activity. Accordingly, the plain view exception is inapplicable, and the facts do not reveal any other possible justification that would render the seizure reasonable./2

We note that even Boone v. State, 383 A.2d 412, 420 (Md. 1978), which the dissent proffers as supporting its position, held unconstitutional a seizure which occurred during an eviction because the items seized were not incriminating on their face. In Boone, the court stated that it could equate the policy of not putting a tenant's dangerous or valuable items on the street, with the inventory rationale of Fourth Amendment jurisprudence and the concern for public safety. Id. at 419. Neither justification applies where the eviction is stayed and the property would otherwise remain with the tenant. No case implies that such an arbitrary seizure is lawful, and basic Fourth Amendment law establishes it is not.

In summary, it was clearly established law at the time of the seizure that even seizures pursuant to an eviction are not immune to the strictures of the Fourth Amendment. Here, the defendants seized the weapons even though they knew that the eviction had been stayed by order of the court and thus that the seizure was not pursuant to any court order. It was also clearly established that warrantless seizures of personal effects from a home are presumably unreasonable. No exception to that rule or other circumstances apparent in this motion to dismiss would render objectively reasonable their belief that this seizure was constitutional. Therefore, there is no basis for qualified immunity, and the decision

of the district court in Perry I must be reversed
on this issue.

II.

That leaves us with Perry II, which presents an
identical issue to that in Perry I. The only
claim in Perry II that was not raised in Perry I
was the request for money damages against Sheahan
in his individual capacity. In his reply brief
before this court, however, Perry withdrew that
claim, and limited the appeal to the claims for
injunctive and declaratory relief. Therefore, we
are left with a case that is identical to Perry
I, except for the inclusion of some facts that
Perry (mistakenly) believes would establish his
standing to seek injunctive and declaratory
relief. Perry asserts that Perry II is beyond the
reach of res judicata because the injunctive and
declaratory claims were dismissed for lack of
subject matter jurisdiction based on his failure
to demonstrate standing, and thus it was not a
judgment on the merits under R. 41(b). That
truism gets him nowhere. Although only judgments
on the merits preclude parties from litigating
the same cause of action in a subsequent suit,
that does not mean that dismissals for lack of
jurisdiction have no preclusive effect at all. A
dismissal for lack of jurisdiction precludes
relitigation of the issue actually decided,
namely the jurisdictional issue. Magnus
Electronics, Inc. v. La Republica Argentina, 830
F.2d 1396, 1400 (7th Cir. 1987). The difference is
in the type of preclusion, not the fact of
preclusion. "[A] judgment on the merits precludes
relitigation of any ground within the compass of
the suit, while a jurisdictional dismissal
precludes only relitigation of the ground of that
dismissal . . . and thus has collateral estoppel
(issue preclusion) effect rather than the broader
res judicata effect that nowadays goes by the
name of claim preclusion." Okoro v. Bohman, 164
F.3d 1059, 1063 (7th Cir. 1999). Therefore, Perry
cannot escape the preclusive effect of Perry I by
the rote intonation that this is not a judgment
on the merits. The determination that Perry
lacked standing in Perry I precludes relitigation
of the same standing argument in Perry II.

Nor can the addition of new factual allegations
save Perry II by transforming the standing issue
into a different one than that decided in Perry
I. Perry conceded at oral argument that the
factual allegations included in Perry II did not
represent a change in circumstances between Perry
I and Perry II. Instead, they were facts known
when Perry I was brought, but that were never
included in the complaint. In Magnus, we rejected
a similar attempt to circumvent issue preclusion.
We held that where a prior suit is dismissed for

lack of jurisdiction, the inclusion of additional factual allegations on the jurisdictional issue will not avoid issue preclusion when those facts were available at the time the original complaint was filed. Only facts arising after the complaint was dismissed--or at least after the final opportunity to present the facts to the court-- can operate to defeat the bar of issue preclusion. As the Magnus court recognized,

[u]nder a system such as that established by the Federal Rules of Civil Procedure, which permits liberal amendment of pleadings, it does not make sense to allow a plaintiff to begin the same suit over and over again in the same court, each time alleging additional facts that the plaintiff was aware of from the beginning of the suit, until it finally satisfies the jurisdictional requirements.

Id. at 1401. That is precisely what Perry attempted here. We affirm the dismissal of Perry II, although on grounds of issue preclusion rather than for lack of standing.

Finally, we are disturbed at the sequence of events in this case which resulted in a waste of judicial resources that should have been apparent from the inception. Perry II was nothing more than a reargument of the same contentions rejected in Perry I, that were barred by issue preclusion, and that duplicated the arguments simultaneously being made in this court on appeal from Perry I. The subsequent appeal of Perry II as well only worsened the situation. Perry withdrew all arguments in Perry II except for the arguments that were identical to the Perry I appeal. This withdrawal, however, did not come until his reply brief, thus forcing opposing counsel to respond and this court to review arguments which Perry did not intend to pursue. This abuse of the judicial process is impermissible. Any similar behavior in the future shall result in the imposition of sanctions.

For the reasons stated above, the decision of the district court in Perry I is affirmed in part and reversed in part, and the case remanded for further proceedings consistent with this opinion. The decision in Perry II is affirmed.

/1 We do not hold that the Fourth Amendment seizure analysis is an all-or-nothing proposition. Certainly, if the defendants had discovered incriminating evidence, they could have seized it even though the eviction order was stayed, and even though they could not seize any other property.

/2 The argument that the defendants needed to seize the firearms because evictions are inherently volatile situations is patently unsupported by the facts here. The deputies had been at the apartment for three hours before they even removed the firearms from the premises. At that time, the eviction had been called off. There are no allegations that Perry had to be restrained or was otherwise violent during the three hours they were there. Those facts are insufficient to support a motion to dismiss on grounds of qualified immunity premised on the danger of the situation.

Posner, Circuit Judge, concurring in part and dissenting in part. My disagreement is limited to the rejection of the officers' defense of qualified immunity. The Cook County Sheriff's police have a practice, which seems sensible and is supported by the only case I have found dealing with such a practice, Boone v. State, 383 A.2d 412, 419 (Md. App. 1978), of seizing any weapons found during the course of an eviction at which police are present, even if there is no reason to believe that the weapons are contraband or evidence of crime. The seizure is temporary; the owner is entitled to their return; and since eviction can be an emotional experience, see, e.g., Mellott v. Heemer, 161 F.3d 117, 122-23 (3d Cir. 1998); Parrott v. Wilson, 707 F.2d 1262, 1265-66 (11th Cir. 1983)--in the second of these cases the eviction led to gunfire and death--and placing a cache of weapons along with the rest of the tenant's property on the sidewalk can be an invitation to thieves, the temporary sequestration of the tenant's guns by the police is a justifiable measure of public safety. I do not understand the majority to disagree with this proposition, and it follows a fortiori that the police would be protected by the doctrine of official immunity from any suit for damages based on such a seizure. Of course the police who seized Perry's weapons could not reasonably have believed that they had a right to seize any and all property found on a tenant's premises in the course of an eviction. But in an analysis of their immunity defense the only question would be whether they could reasonably have believed themselves entitled to seize weapons found there. Any idea that because the police can't seize everything they find, they can't seize anything they find, would be not only a logical error but also a violation of the principle that a claim of immunity is defeated not by invoking generalities but by showing that the specific conduct

complained of had been determined to be unlawful before the defendants acted, so that they were on clear notice of the unlawfulness of the conduct. E.g., Wilson v. Layne, 526 U.S. 603, 614-15 (1999); Anderson v. Creighton, 483 U.S. 635, 639-41 (1987); Greenberg v. Kmetko, 922 F.2d 382, 384 (7th Cir. 1991).

The wrinkle here is that the police learned during the course of the eviction that it had been stayed yet took the weapons anyway. It is arguable, however, that the need for a "cooling off" period remained and that it would have been imprudent for the police, having begun to collect the weapons preparatory to removing them, to return them to Mr. Perry and then, as it were, turn their backs to him and leave. It is not a conclusive argument, but it is not so off the wall as to excuse the plaintiff, if he wants to argue that no reasonable police officer could rely on such an argument, to present some case authority rejecting it. This he has not done and could not do. It is true that when the constitutional violation is patent, the defense of immunity can be rejected without case authority. Burgess v. Lowery, 201 F.3d 942, 944-45 (7th Cir. 2000); Anderson v. Romero, 72 F.3d 518, 526-27 (7th Cir. 1995); Eberhardt v. O'Malley, 17 F.3d 1023, 1028 (7th Cir. 1994); McBride v. Village of Michiana, 100 F.3d 457, 460 (6th Cir. 1996); Buonocore v. Harris, 65 F.3d 347, 356-57 (4th Cir. 1995). The violation might be so patent that no one had ever committed it or sought to fight a suit complaining of it. But that is not this case. The majority opinion misses the point when it says that "the argument that the defendants needed to seize the firearms because evictions are inherently volatile situations is patently unsupported by the facts here." If, as this passage could be read to concede, evictions are indeed inherently volatile, then prudence would justify the seizure of weapons even if the tenant did not appear to be violent. At least the argument that it would is not so ridiculous that it can be rejected on the basis of "basic Fourth Amendment law." What the majority calls "basic Fourth Amendment law" is merely the generalities of Fourth Amendment doctrine; and general principles do not decide immunity issues, as the Supreme Court made clear in the Wilson and Anderson decisions that I cited.

We ought to use some imagination, and put ourselves in the place of these police officers, not learned in the law, when the eviction was called off. Could it really be said that they should have known that the Constitution prohibited them from temporarily sequestering Perry's alarming pile of weaponry? I think not.

The defendants are entitled to immunity from the plaintiff's claim of damages, and I would therefore affirm the dismissal of both suits.