NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 8, 2010
Decided August 13, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 09-3238

| | |
|---|---|
| ERNESTINE WALDON and VERGIE SMALL, | Appeal from the United States District Court for the Southern District of Indiana, |
| *Plaintiffs-Appellants*, | Indianapolis Division. |
| *v.* | No. 1:07-cv-01329-LJM-DML |
| DONNA WILKINS, M.D., Health Officer, Delaware County, *et al.*, | Larry J. McKinney, |
| *Defendants-Appellees*. | *Judge*. |

**ORDER**

This civil rights action arises from the court-ordered demolition of property owned by Ernestine Waldon and Vergie Small. Waldon and Small claim that county officials demolished the property without giving proper notice. They claim that the defendants wrongly served notice by mail to the demolition site when they knew that such service was unlikely to reach them. They further allege that the subsequent removal of their personal

belongings was an unreasonable seizure in violation of the Fourth Amendment and an uncompensated taking in violation of the Fifth Amendment. The district court dismissed the case for lack of jurisdiction under the *Rooker-Feldman* doctrine. Although *Rooker-Feldman* is inapplicable, we conclude that the district court judgment can be affirmed on the alternative ground that Waldon and Small failed to state a claim.

We accept as true all well-pleaded allegations in the complaint, construing ambiguities in favor of the plaintiff. *Kim v. Carter's Inc.*, 598 F.3d 362, 363 (7th Cir. 2010). Small and Waldon owned an overgrown, debris-littered tract of land in Galston, Indiana. There was a mobile home on the property, along with a barn, a trailer, and several motor vehicles. The Delaware County health department deemed the property unfit for habitation and ordered it vacated. The county gave Small and Waldon two weeks to abate the offending conditions—to remove the debris, sanitize the mobile home, and mow the unkempt lot. When they failed to respond, the county sued in state court to have the property be declared a public nuisance and authorize the health department to "take whatever means necessary to bring the property into compliance." Copies of the complaint, the summons, and an order setting a date for an emergency hearing were delivered to the property. Shortly before the hearing, Waldon sought a continuance but was denied.

The state-court hearing went forward without Waldon or Small in attendance. Health department employee Joshua Williams testified to the unlawful conditions on the Galston property, which as of that morning had not been abated. The court entered judgment for the county, determining that the property violated the county's health codes and the county's junk-car ordinance. The court ordered the property owners to remove any property of value within ten days, after which the health department would be authorized to remove the mobile home and any personal property located on the tract of land. Waldon and Small were to reimburse the county for attorneys' fees and costs of removal. County attorney Donald Dunnuck arranged for a copy of the order to be mailed to Small and Waldon at the property. Neither individual, however, received notice.

The plaintiffs maintain that Dunnuck and Williams knew the mailing was unlikely to reach them. Dunnuck and Williams allegedly knew that the property was vacated and that the plaintiffs were living elsewhere. Indeed, Williams testified to that much at the hearing, even providing the address of their residence in Redke, Indiana; Dunnuck, for his part, assured the court he would see to it that the plaintiffs received notice.

The county began demolition eleven days after the entry of the court order. To help with the demolition, Williams brought on Rodney Barber, who in turn hired his brother Carl, a Galston police officer. Waldon arrived at the site during the demolition team's

second day of work.  By this point the mobile home had been razed, and the defendants had begun to remove plaintiffs' personal property.

Waldon tried to retrieve her belongings and met stern opposition.  A uniformed Carl Barber threatened to arrest her if she interfered with the removal.  Waldon protested that she never received notice of the demolition, but Williams responded that he did not "give a God damn and that if she pissed him off he would have her arrested."  When she persisted and demanded her property's return, Rodney Barber warned her that "the madder she made him the greater his bill for the demolition would be."  Precisely what was lost or recovered is not clear from the complaint.  The plaintiffs allege that the defendants impounded four motor vehicles, for which Waldon paid $430 to retrieve, and damaged others.  They further allege that the demolition team packed furniture and other personal property into a trailer, which they refused to return.

After the denial of post-judgment motions they had filed to set aside the demolition order, plaintiffs appealed the order to the state appellate court.  The Indiana Court of Appeals affirmed, concluding that the plaintiffs' due process rights in the proceedings had not been violated and that any misconduct on the county's part had no bearing on the validity of the demolition order.  However, with regard to the manner in which the order was executed (and their personal property handled), the court determined that any such claims needed to be brought in a separate lawsuit against the individuals and entities involved in executing the order.  *Waldon v. Wilkins*, 859 N.E.2d 395, 2006 WL 3833526 (Ind. Ct. App. 2006).  The Indiana Supreme Court and the United States Supreme Court declined review.  *Waldon v. Wilkins*, 869 N.E.2d 462 (Ind. June 21, 2007); *Waldon v. Wilkins*, 522 U.S. 1046 (2007).

In this suit under 42 U.S.C. § 1983, Waldon and Small alleged that the defendants violated the Due Process Clause of the Fifth Amendment (as applied to the states through the Fourteenth Amendment) when they mailed notice of the demolition order to the Gaston property knowing it was vacant.  They also claim that the subsequent removal of their personal property violated the Takings Clause of the Fifth Amendment and the Fourth Amendment's protection against an unreasonable seizure.  They named as defendants Delaware County Health Officer Donna Wilkins, Joshua Williams, Donald Dunnuck, and Carl and Rodney Barber.

The Delaware County defendants (Wilkins, Williams, and Dunnuck) responded by moving to dismiss the complaint, arguing that the district court lacked subject matter jurisdiction.  Invoking the *Rooker-Feldman* doctrine, *see Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust, Co.*, 263 U.S. 413, 415-16 (1923), they argued the complaint was a thinly-veiled attempt to collect damages for injuries

caused by a state-court judgment. Alternatively they argued that the complaint failed as a matter of law under the doctrines of res judicata and quasi-judicial immunity. When the plaintiffs did not respond to the motion, the district court dismissed these defendants under *Rooker-Feldman*, explaining that it would be impossible to grant plaintiffs' requested relief without disturbing the judgments of the Indiana state courts.

Plaintiffs sought relief from the judgment on the basis that their failure to respond was due to the excusable neglect of their attorney. *See* FED. R. CIV. P. 60(b). The district court agreed that the failure to respond was excusable but denied the motion anyway, still convinced the federal claims were not sufficiently independent of the state-court judgment to avoid application of *Rooker-Feldman*. The Barber brothers proceeded to file a motion to dismiss that mirrored the motion filed by the Delaware County defendants, and the court granted that motion, also on *Rooker-Feldman* grounds.

Plaintiffs' primary argument on appeal is that the district court erred in applying the *Rooker-Feldman* doctrine. We agree. *Rooker-Feldman* precludes lower federal courts from reviewing claims that seek to challenge state-court judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Kelley v. Med-1 Solutions*, 548 F.3d 600, 603 (7th Cir. 2008); *Beth-El All Nations Church v. City of Chicago*, 486 F.3d 286, 292 (7th Cir. 2007). The injuries alleged here arose not from the trial court order authorizing the demolition but from the willful conduct of the officials charged with carrying it out. Therefore, the state-court judgment would neither be invalidated nor disturbed if the federal claims proved successful.

Even though we conclude the district court had jurisdiction to hear the case, we nonetheless affirm the district court's dismissal because the complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6). *See Brosted v. Unum Life Ins. Co. of America*, 421 F.3d 459, 467 (7th Cir. 2005) (appellate court may affirm on any basis supported in the record). The complaint alleged violations under the Takings Clause, the Due Process Clause, and the Fourth Amendment, but none of these allegations states a claim. For instance, plaintiffs alleged that the defendants violated the Takings Clause when they failed to provide fair compensation for personal property lost or damaged during the demolition. The demolition, however, was not an exercise of the county's takings power but rather its police power, which is broader than the takings power and generally will not require compensation for affected property owners. *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 481-84 (1987); *Casitas Mun. Water Dist. V. United States*, 556 F.3d 1329, 1332 n.2 (Fed. Cir. 2009).

In any event, a takings claim is unripe because the plaintiffs have not alleged that they have sought and been denied compensation at the state level. *Williamson County Reg'l*

*Planning Comm'n v. Hamilton Bank of Johnson County*, 473 U.S. 172, 195 (1985); *Muscarello v. Ogle County Bd. Of Comm'rs*, 2010 WL 2541067, at 5 (7th Cir. June 24, 2010); *Peters v. Vill. of Clifton*, 498 F.3d 727, 732 (7th Cir. 2007).

The procedural due process claim is similarly meritless.  Plaintiffs alleged that they never had an opportunity to retrieve their belongings from the Galston property because Williams and Dunnuck failed to take reasonable measures to apprise them of the demolition.  The plaintiffs' allegations make clear that their claim is based on "random and unauthorized" conduct of state actors—Williams and Dunnuck—as opposed to a deprivation based on established state procedure.  For a party alleging such a procedural due process claim based on "random and unauthorized" conduct, the plaintiff must "either avail himself of state post-deprivation remedies 'or demonstrate that the available remedies are inadequate.'"  *Leavell v. Illinois Dep't of Natural Res.*, 600 F.3d 798, 805 (7th Cir. 2010) (internal quotation omitted); *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996).  But the plaintiffs have alleged neither that they sought relief nor that the relief available at the state level was inadequate.  Indiana law provides adequate remedies for property deprivations caused by state officials.  *See* IND. CODE § 34-27-3-1 (state-provided mandamus action); *see also New Burnham Prairie Homes v. Burnham*, 910 F.2d 1474, 1480 (7th Cir. 1990) (holding that mandamus action was an adequate state-law remedy for violations of due process); *Belcher v. Norton*, 497 F.3d 742, 751 (7th Cir. 2007).  Because plaintiffs have not alleged that the state's post-deprivation remedies failed to satisfy due process, they have not stated a due process violation.

Perhaps the most difficult allegations to assess are those involving the Fourth Amendment.  These allegations are poorly pleaded, but plaintiffs appear to allege that Williams and the Barber brothers violated the Fourth Amendment when they seized their personal property and refused to return it and then threatened to arrest Waldon, or even raise the costs of removal, should she persist in demanding the return of her belongings.  Conceivably the complaint could be read to allege a less plausible theory: that the seizure was unreasonable because the defendants carried it out despite knowing that Small and Waldon were unlikely to have received notice of the demolition order.

In determining whether a complaint states a claim under the Fourth Amendment, this court examines whether the defendants' alleged conduct constituted an unreasonable seizure.  *Brokaw v. Mercer County*, 235 F.3d 1000, 1010 (7th Cir. 2000).  It cannot be disputed that the physical removal of plaintiffs' belongings from the demolition site constituted a "seizure" under the Fourth Amendment.  *See Soldal v. Cook County, Ill.*, 506 U.S. 56, 62-63 (1992); *Lee v. City of Chicago*, 330 F.3d 456, 460 (7th Cir. 2003); *Perry v. Sheahan*, 222 F.3d 309, 316 (7th Cir. 2000).

But have plaintiffs alleged that the seizure was unreasonable?  That the defendants acted pursuant to a court order suggests it was reasonable, *see Soldal*, 506 U.S. at 549; *Perry*, 222 F.3d at 316, but an authorized seizure is not reasonable if carried out in an unreasonable manner.  *See Brokaw*, 235 F.3d at 1011.  The plaintiffs, however, have not alleged anything unreasonable about the seizure itself.  If Williams and the Barbers showed poor judgment by threatening to either arrest Waldon or hike up demolition fees, nothing they did or said took on constitutional proportions.  Moreover, we have rejected the notion that an unreasonable seizure can be continuous, so any Fourth Amendment theory predicated on the defendants continued possession of the personal property is without merit.  *See Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003).

Finally, the defendants' failure by itself to properly notify the defendants would not expose them to liability under the Fourth Amendment.  For an officer to face liability for executing a preauthorized seizure, he must have executed it with knowledge that the authorization was defective.  *See Dunn v. City of Elgin*, 347 F.3d 641, 648-49 (7th Cir. 2003); *Siebert v. Severino*, 256 F.3d 648, 656-57 (7th Cir. 2001)*; Perry*, 222 F.3d at 315.  But here the plaintiffs did not allege that the authorization was defective, or that Indiana law would nullify a demolition order because of improper service of notice.  Because they have not alleged that the defendants ever had reason to doubt their authority to execute the court's order, they have not stated a claim under the Fourth Amendment.

AFFIRMED.