150 F.3d 671
 158 L.R.R.M. (BNA) 2955, 26 Media L. Rep. 2405
 Marcus WIGGINS, Plaintiff-Appellee,
and
Chicago Reader, Incorporated, John Conroy, Citizens Alert,
et al., Intervenors-Appellees,
v.
Leroy MARTIN, former Superintendent, Chicago Police
Department, James O'Brien, Detective, # 8825,
Anthony Maslanka, # 16161, et al., Defendants,
and
Fraternal Order of Police, Lodge No. 7, Intervenor-Appellant.
 No. 97-2446.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 20, 1998.
Decided July 15, 1998.
 
 G. Flint Taylor (argued), People's Law Office, Chicago, IL, for Plaintiff-Appellee.
 Lawrence Rosenthal, Benna R. Solomon, Susan S. Sher, Patricia T. Bergeson, Office of the Corporation Counsel, Appeals Division, Chicago, IL, for Defendants.
 Dale D. Pierson, Baum, Sigman, Auerbach, Pierson & Newman, Chicago, IL, for Intervenor-Appellant Fraternal Order of Police, Lodge No. 7.
 David J. Philipps, Beeler, Schad & Diamond, Chicago, IL; David W. Andich (argued), Rock Island, IL, for Intervenor-Appellee Chicago Reader, Incorporated.
 David J. Philipps, Beeler, Schad & Diamond, Chicago, IL; David W. Andich, Rock Island, IL, for Intervenor-Appellee John Conroy.
 David J. Philipps, Beeler, Schad & Diamond, Chicago, IL, for Intervenor-Appellees Citizens Alert and Task Force to Confront Police Violence.
 Before CUMMINGS, MANION and ROVNER, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 In 1993, plaintiff Marcus Wiggins filed this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1367(a), alleging that the Chicago Police Department and two of its detectives tortured him with electric shock in accordance with its practice involving 40 prior incidents of torture and abuse. He claimed that the individual defendants were not properly disciplined or supervised. He set forth the names of alleged police torture victims. As part of his discovery plaintiff sought various files and documents involving prior instances of such torture.
 
 
 2
 On August 29, 1996, just prior to the scheduled trial date, the case was settled for $95,000, and on October 10, 1996, the case was dismissed with prejudice, both sides bearing their own costs and attorneys' fees.
 
 
 3
 On October 24, 1996, plaintiff filed a motion to strike the confidential designation on certain documents produced by the City of Chicago during discovery. On the same date the Chicago Reader, John Conroy, Citizens Alert and the Task Force to Prevent Police Violence moved to intervene, and their motion was granted on November 14, 1996.
 
 
 4
 On August 16, 1994, the Fraternal Order of Police ("FOP") filed a motion to intervene, which was denied on the same date. However, on November 20, 1996, the same group again moved to intervene and that motion was granted by the district court on November 26, 1996.
 
 
 5
 On May 9, 1997, Judge Castillo handed down a Memorandum Opinion and Order granting plaintiff's and intervenors' motion to strike the confidential designation on "(1) OPS investigative files and administrative reviews, recommendations and findings in this particular case and ten other alleged police torture cases; (the following is a list of the requested files: Gregory Banks, CR # 134947 and 188617, Darrell Cannon, CR # 134723, Philip Adkins, CR # 142201, Lavert Jones and Thomas Craft, CR # 200390, Michael Johnson, CR # 125071, plaintiff Marcus Wiggins, CR # 193591, Andrew Wilson, CR # 123543, the People's Law Office, CR # 188624, Donald White, CR # 169867, TyShaun Ross, CR # 185626, Grayland Johnson, CR # 168190, and Stanley Wrice, CR # 202019); (2) portions of the Goldston Report; and (3) Police Foundation Memorandum dated July 30, 1992." The court also granted plaintiff's motion to strike the confidential designation on certain documents produced by the City of Chicago and the intervenors' motion to obtain access to those documents.
 
 
 6
 A month thereafter the FOP filed its notice of appeal, and in March 1998 plaintiff Wiggins filed a brief urging us to dismiss the appeal or to affirm the district court's decision. Intervenors Chicago Reader, John Conroy, Citizens Alert and Task Force to Prevent Police Violence seek affirmance. Neither the City of Chicago nor any individual police officers have appealed. We hold that the FOP is without standing and therefore dismiss the appeal.
 
 Standing of Fraternal Order of Police
 
 7
 As a preliminary matter, the FOP argues that plaintiff waived his right to contest standing because he did not appeal the grant of the intervention petition of the FOP. However, such a jurisdictional question cannot be waived. Diamond v. Charles, 476 U.S. 54, 106 S.Ct. 1697, 90 L.Ed.2d 48; Associated Builders & Contractors v. Perry, 16 F.3d 688 (6th Cir.1994); Ragsdale v. Turnock, 941 F.2d 501 (7th Cir.1991), certiorari denied, 502 U.S. 1035, 112 S.Ct. 879, 116 L.Ed.2d 784.
 
 
 8
 Although the FOP was permitted to intervene in the trial court, it may nevertheless lack standing on appeal. Diamond v. Charles, 476 U.S. 54, 106 S.Ct. 1697, 90 L.Ed.2d 48. It should be noted that the City of Chicago and the individual officers, the defendants with whom the FOP are aligned, have not appealed nor have the other intervenors. Therefore, to demonstrate standing, the FOP must have either standing on its own behalf or associational standing.
 
 
 9
 The FOP does not have standing to appeal on its own behalf because it cannot demonstrate that it has suffered an injury. The FOP was permitted to intervene based on a supposed contract right to destruction of the documents in question. However, the collective bargaining agreement between the FOP and the City of Chicago, whether it contains a destruction provision or not, does not provide the FOP with standing.
 
 
 10
 First of all, the FOP has not clearly demonstrated that the present collective bargaining agreement contains a destruction provision. The contract which contained the destruction provision had been replaced 17 months before, on July 1, 1995, but the FOP did not advise the district court of its expiration. On August 11, 1997, the FOP represented that the present collective bargaining agreement contained a destruction provision, but attached the contract that became effective on July 1, 1995, which did not contain a section on the destruction of documents. On August 21, 1997, the FOP requested permission to substitute a new exhibit, claiming that the document destruction provision was omitted due to a scrivener's error. The district court allowed the FOP to substitute for the present contract a copy of an earlier collective bargaining agreement dated January 1, 1992 through June 30, 1995, which contained the document destruction provision. As a result, there is significant doubt whether the present collective bargaining agreement contains the document destruction provision the FOP is relying upon for standing.[1] See McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (where standing is at issue, the party claiming standing bears the burden of supporting his factual allegations with "competent proof"); see also NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 237 (7th Cir.1995), certiorari denied, 515 U.S. 1104, 115 S.Ct. 2249, 132 L.Ed.2d 257; Hope, Inc. v. County of DuPage, Illinois, 738 F.2d 797, 808 (7th Cir.1984); Retired Chicago Police Ass'n v. City of Chicago, 76 F.3d 856, 862 (7th Cir.1996), certiorari denied, --- U.S. ----, 117 S.Ct. 305, 136 L.Ed.2d 222.
 
 
 11
 Even if the present collective bargaining agreement between the FOP and the City of Chicago contains a document destruction provision, the FOP still would lack standing to appeal. Because the agreement is only between the City of Chicago and the FOP, a contractual document destruction provision would impose no obligation on individuals such as the intervenors. The FOP claims that it suffered an injury when "Plaintiff refused to honor its contract;" however, plaintiff Wiggins had no duty to honor a contract between the FOP and the City of Chicago. While the FOP argues that the intervenors "circumvented the contractual obligations between the City of Chicago and the FOP," such an action by the intervenors would not provide the FOP with an injury giving it standing.
 
 
 12
 In addition, even if a destruction provision currently exists, the FOP has not shown it has a right to the destruction of the documents in question. The FOP does not suggest that there has been a breach of its agreement with the city as a result of the district court's access order. The document destruction provision requires destruction of documents within five years "unless the investigation relates to a matter which has been subject to either civil or court litigation or arbitration prior to the expiration of the five year period." If documents are subject to litigation, they are not to be destroyed until five years after the litigation is concluded. Based on this exception to the document destruction provision and the on-going nature of the police brutality litigation, the FOP cannot establish that the City of Chicago has breached the agreement by not destroying the records, and therefore has failed to show that it has suffered an injury in fact or an injury which is redressable by this Court. Los Angeles v. Lyons, 461 U.S. 95, 101-102, 103 S.Ct. 1660, 75 L.Ed.2d 675; Steel Co. v. Citizens for a Better Environment, ---- U.S. ----, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)[2]
 
 
 13
 Finally, the FOP has not demonstrated that it has an existing privacy right in the documents. FOP members have no possessory interest in the documents sought, and because of the widespread dissemination of the documents, any privacy rights have already been defeated by their publication and are no longer redressable. Thus, even if a document destruction provision exists in the present collective bargaining agreement between the City of Chicago and the FOP, it does not provide the FOP with standing on its own behalf to challenge the intervenors' access rights.
 
 
 14
 The FOP also does not have associational standing. To obtain associational standing, an organization must satisfy the three-prong test of Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383:
 
 
 15
 [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.
 
 
 16
 The FOP has not shown that its individual members have any contract or privacy claims against the appellee-intervenors, and therefore it fails to satisfy even the first requirement of the Hunt test. The FOP also has not demonstrated by "competent proof" that the interests it seeks to protect are "germane to the organization's purpose," the second Hunt requirement. The FOP offers no more about its purpose than it is the "sole and exclusive collective bargaining representative for all sworn police officers below the rank of sergeant employed by the City of Chicago in its Department of Police," and therefore there is no basis to conclude that destruction of documents is "germane to the organization's purpose." In fact, it cannot be assumed that all 13,000 members support non-disclosure; an officer exonerated of a brutality charge may be in favor of disclosing the records. Accordingly, the FOP has not satisfied its burden of establishing that "the interests it seeks to protect are germane to the organization's purpose." Finally, the third requirement of the Hunt test has not been satisfied because the FOP's effort to deny access requires the participation of its individual members, and there has been no showing that the individual members favor non-disclosure of these documents.
 
 
 17
 Because the FOP has failed to demonstrate that it has standing to appeal by itself or as an association, it is unable to pursue this appeal.
 
 
 18
 Appeal dismissed.
 
 
 
 [1]
 While the FOP would be expected to correct a scrivener's error in a contract relevant to the case in a timelier fashion, the motion to strike portions of the FOP's reply brief and reply appendix is denied
 
 
 [2]
 Furthermore, the FOP did not appeal the district court's June 16, 1994 preservation order, reaffirmed on September 5, 1995, which mandated that defendant City of Chicago preserve the disciplinary records involving all Chicago police officers. Thus the preservation orders would also prohibit the FOP from enforcing any right to the destruction of documents