# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-1476

SCOTT STONE and MARIAN REDELL,
on their own behalf and on behalf
of those similarly situated,

*Plaintiffs-Appellants*,

v.

JOHN M. HAMILTON, in his official capacity
as Secretary of the Indiana Family and
Social Services Administration,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 01 C 564—**Larry J. McKinney,** *Chief Judge.*

———————

ARGUED SEPTEMBER 4, 2002—DECIDED OCTOBER 18, 2002

———————

Before BAUER, ROVNER, and EVANS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Prior to 1996, the federal Food Stamp Act prohibited a state from collecting a food stamp overissuance that was due to its own administrative error ("agency error overissuance") by involuntarily reducing a food stamp recipient's food stamp allotment. States were permitted, but not required, to recoup overissuances by other means. In 1996, Congress amended the statute to require states to collect agency error overissuances by involuntary means, including by involuntarily reducing

a food stamp recipient's food stamp allotment. A class of food stamp recipients ("recipients") sued the Secretary of the Indiana Family and Social Services Agency ("State"), challenging the State's ability to involuntarily reduce a recipient's food stamp allotment to collect for overissuances made prior to the 1996 amendment to the Food Stamp Act. The district court denied the plaintiffs' motion for summary judgment and granted summary judgment in favor of the defendant. We reverse and remand for further proceedings.

## I.

In order to alleviate hunger and malnutrition among the economically disadvantaged, the federal government funds a program to provide food stamps to low-income individuals. 7 U.S.C. § 2011. Although funded by the federal government, each state must administer the program in compliance with the Federal Food Stamp Act and the accompanying regulations. 7 U.S.C. § 2020, 7 C.F.R. § 273.18(a)(2)-(3). The state's agencies in charge of doling out food stamps occasionally err and issue more food stamps than a recipient is entitled to receive. The state has always been entitled to collect from recipients who, due to agency error, received an overissuance of food stamps (7 U.S.C. § 2022(a)), but prior to 1996, the state could not do so by involuntarily reducing a recipient's current food stamp allotment. 7 U.S.C. § 2022(b)(2) (1995). The overissuances could only be collected by "other means." 7 U.S.C. § 2022(b)(2)(B) (1995).[1] The problem for the states,

---

[1]  Prior to August 1996, the statute stated,

* * *

  (b)   Reduction of allotment; cash payments; collection by State agencies

(continued...)

of course, was that the recipients from whom they might collect were impoverished and thus had few, if any assets from which to collect "by other means." All of that changed, however, when Congress amended the Food Stamp Act by enacting the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, § 844, 110 Stat. 2105 (Aug. 22, 1996). Where before the states were prohibited from using food stamp allotment reduction as a method for collecting agency error over issuances, the new Act *required* the state to use involuntary means, including food stamp allotment reduction, to collect from recipients in these cases. 7 U.S.C. § 2022(b) (2002). The regulations implementing the amendment require states to recoup overissuances by involuntarily reducing a recipient's food stamp allotment. 7 C.F.R.

---

[1]  (...continued)

\* \* \*

(2)(A) State agencies shall collect any claim against a household arising from the overissuance of coupons, other than . . . claims arising from an error of the State agency, by reducing the monthly allotments of the household . . . .

(B) State agencies may collect any claim against a household arising from the overissuance of coupons, other than claims collected pursuant to paragraph (1) or subparagraph (A), by using other means of collection.

\* \* \*

(d) Recovery of overissuance of coupons

The amount of an overissuance of coupons as determined under subsection (b) of this section and except for claims arising from an error of the State agency, that has not been recovered pursuant to such subsection may be recovered from Federal pay (including salaries and pensions) as authorized by section 5514 of Title 5.

7 U.S.C. § 2022 (1995).

§ 273.18(g)(1) (2002). Suddenly the states were not only required to collect for their errors, but they also had an effective means of doing so.[2]

After enactment of the amendment, the State began sending out notices that it would be reducing food stamp allotments to collect for agency error overissuances. Some of these notices went to persons who had received the overissuances long before Congress enacted the new amendment. For instance, in a Notice of Action mailed on September 1, 2000, the State informed Marian Redell that it was now going to collect—by reducing her monthly food stamp allotment—for an overissuance of food stamps that she received in 1988.

In 1988, the State wrote to Ms. Redell asking for voluntary repayment of the overissuance but stated in bold capitalized letters, "**BECAUSE THE ERROR WAS MADE BY OUR AGENCY YOU ARE NOT REQUIRED TO AGREE TO REPAY THE OVERISSUED BENEFITS**."

---

[2]  After August 22, 1996, the statute stated,

> (b) Collection of overissuances
>
> > (1) In general
> >
> > > Except as otherwise provided in this subsection, a State agency shall collect any overissuance of coupons issued to a household by—
> > >
> > > > (A) reducing the allotment of the household;
> > > >
> > > > (B) withholding amounts from unemployment compensation from a member of the household under subsection (c) of this section;
> > > >
> > > > (C) recovering from Federal pay or a Federal income tax refund under subsection (d) of this section; or
> > > >
> > > > (D) any other means.

7 U.S.C. § 2022 (2002).

(R. Doc. 30). It warned Ms. Redell, however, that it was reserving the right to pursue other collection methods permitted by federal law. Despite the warning, for approximately twelve years, the State took no action to collect from Ms. Redell.

Similarly, in January 1986, the State informed Scott Stone that, due to its error, in August 1984 and in February through December 1985, he had received $233 in food stamps that he was not entitled to receive. The notification asked Stone to voluntarily pay back the amount of the overissuance. Mr. Stone paid back $98 over the course of two years from 1986 to 1988, but then paid nothing further. As with Ms. Redell, from December 1988, when Mr. Stone stopped making payments, through September 2000, the State did nothing further to collect for the overpayments. On September 1, 2000, the State sent Mr. Stone a notice informing him that it was going to begin recouping the balance due on the overpayment by reducing his food stamp allotment.

Mr. Stone and Ms. Redell sued the State in district court, challenging its ability to reduce current food stamp allotments to collect for overissuances which occurred prior to the effective date of the amendment. The district court certified the case as a class action in which Mr. Stone and Ms. Redell represent a class of "all individuals in the State of Indiana who received an overissuance of food stamps due to an agency error at any time prior to August 22, 1996." The plaintiffs filed a motion for summary judgment asking the district court to grant a permanent injunction prohibiting the State from retroactively applying the amendments to the Food Stamp Act. Shortly thereafter, the defendant filed its motion for summary judgment. The district court granted summary judgment in favor of the defendant, the Secretary of the Indiana Family and Social Services Administration. The food stamp recipients appeal.

## II.

We review the district court's ruling on summary judgment de novo, construing the record in the light most favorable to the nonmovant. *Oconomowoc Residential Programs Inc. v. City of Milwaukee*, 300 F.3d 775, 777 (7th Cir. 2002). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The sole issue presented by the parties is whether the application of the Food Stamp Act amendments to pre-1996 overissuances constitutes an impermissible retroactive application of the law. We begin with the recognition that the law disfavors a retroactive application of a statute. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). "Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* The first step in determining whether a law applies to conduct occurring prior to the passage of an act is to ascertain whether Congress has expressly prescribed the statute's reach. *Landgraf v. USI Film Prod.*, 511 U.S. 244, 280 (1994). In this case it is apparent from the face of the amended statute, and both parties agree, that Congress has not expressly stated whether the new provisions of the Act apply to agency error overissuances which occurred prior to enactment of the amendment. The relevant food stamp regulations issued by the Secretary of Agriculture are likewise silent on this question. *See* 7 C.F.R. § 273.18.[3]

---

[3] The State asks us to defer to the Secretary of Agriculture's comments to the final regulations implementing the amendment. In these comments, the Secretary expresses a belief that the

(continued...)

Where there is no congressional directive as to whether the statute should be applied retroactively the court must determine whether the application has a retroactive effect. *Martin v. Hadix*, 527 U.S. 343, 357 (1999). Deciding whether a statute operates retroactively is not always a simple or mechanical task. *Landgraf*, 511 U.S. at 268. A statute does not have a retroactive effect merely because it applies to conduct occurring before the statute's enactment. *Id.* at 269. A statute has a retroactive effect when it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Id.* In making its evaluation, this court must apply a "commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment. This judgment should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations." *Martin*, 527 U.S. at 357-58 (internal citations omitted).[4]

---

[3] (...continued)
amendment could apply to agency error overissuances that occurred prior to enactment. *See* 65 Fed. Reg. 41752, 41766 (July 6, 2000). Although a court must give great deference to an agency's reasonable regulatory interpretations embodied in formal regulations, it need not pay the same heed to less formal statements that do not necessarily reflect the deliberative focus of the entire agency. *Pennington v. Didrickson*, 22 F.3d 1376, 1383 (7th Cir. 1994). The Secretary in this case has not issued any regulations regarding the retroactive application of the statute.

[4] Prior to *Landgraf*, 511 U.S. 244, and *Martin*, 527 U.S. 343, some courts took an overly rigid approach to determining retroactivity by examining whether a statute was procedural or substantive. *See e.g. Alexander v. Robinson*, 756 F.2d 1153, 1155 (5th Cir.
(continued...)

Even before the enactment of the amendment, persons who received an overissuance of food stamps due to agency error were liable for the value of any overissuance of coupons. 7 U.S.C. § 2022(a)(2) (1995). Due to the indigence of food stamp recipients, however, prior to 1996 it was virtually impossible—or at the very least, highly impractical—for the government to recoup agency error over-issuances. Although prior to 1996, the State could collect for agency error overissuance by "other means," (7 U.S.C. § 2022(b)(2)(B) (1995)), the statute does not articulate the other means that might be available. We know from *Mercer v. Magnant*, 40 F.3d 893, 898 (7th Cir. 1994), that a state could intercept and reduce a taxpayer's state tax refund by the amount owed for the overissuance. In addition, a state could initiate a collection action in state court. The State, however, was unlikely to successfully collect from indigent recipients using either method.[5] In short,

---

[4] (...continued)
1985). In *Alexander*, the Fifth Circuit assessed the retroactive application of a similar Food Stamp Act amendment that required the involuntary reduction of a food stamp allotment for food stamp recipients who, due to their own non-fraudulent error (as opposed to agency error, as is the case here) received an overissuance of food stamps. *Id.* at 1154. The Fifth Circuit concluded that the amendment was "procedural and remedial" and thus could be applied retroactively. *Id.* at 1156. Since that time, the Supreme Court has taken "pains to dispel the suggestion that concerns about retroactivity have no application to procedural rules." *Martin,* 527 U.S. at 358. Courts may no longer merely rely upon the label of "procedural" or "remedial" to determine whether a statute operates retroactively. *Id.* We therefore have analyzed the retroactive effect of the amendment at issue in this case using the more recent "commonsense, functional" judgment standard dictated by the *Martin* decision. *Id.* at 357-58.

[5] The State also asserts that prior to the enactment of the amendment it could have collected for an agency error over-
(continued...)

prior to the amendments, for all intents and purposes, there were no legal consequences to the overissuance because the indigent recipients were judgment proof or had no state tax refunds to intercept.

Since the enactment, collection is almost guaranteed. Despite the fact that the plaintiffs remained liable for the overissuances both before and after the enactment of the amendments, viewing the effect of the amendment in a commonsense and functional manner, since the enactment of the amendment, the food stamp recipients face increased legal consequences. By changing the remedies for collecting for overpayments from ineffective and discretionary to highly effective and mandatory, the amendment has increased the recipients' liability for past conduct.

Although the dollar amount of liability the food stamp recipients faced never changed, a new statute can increase the legal consequences to the affected party without necessarily increasing the dollar amount of liability. For example, in *Hughes Aircraft Co. v. United States*, 520 U.S. 939 (1997) the Supreme Court reviewed a 1986 amendment to the False Claims Act that permitted private *qui tam* actions where they had been previously precluded. Prior to the amendment, the False Claims act permitted private parties to sue anyone who had submitted a false claim to the government, but only if the information upon which they were basing their claim was not already in the government's possession. *Id.* The

---

[5] (...continued)
issuance by intercepting unemployment compensation. However, we agree with the food stamp recipients' interpretation that 7 U.S.C. § 2022(c) (1995) (referring to 7 U.S.C. § 2015(b)) allows interception of unemployment compensation benefits only in cases where the overissuance was due to recipient fraud or misrepresentation.

1996 amendment removed the bar (which was, in fact, a significant one) to private suits based on information in the government's possession. *Id.* at 946. Both before and after the amendment, the False Claims Act made it illegal to knowingly submit a false claim for payment to the United States. *Id.* at 947. The amendment did not "alter a defendant's exposure for a false claim by even a single penny." *Id.* at 948. It simply widened the realm of potential plaintiffs who could sue for the false claim. *Id.* at 949-50. By doing so, however, the amendment significantly increased the likelihood that the defendant would be subject to an action for illegal behavior. *Id.* The Court found that this significant extension "attached a new disability, in respect to transactions and considerations already past," and as such could not be applied retroactively. *Id.* at 948.

Our inquiry into whether a statute operates retroactively must also be "informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations." *Martin*, 527 U.S. at 358 (internal citations omitted). The State itself created settled expectations when, under the old system, it sent out notices to overpaid recipients describing its limited ability to collect for agency error overissuances. The recipients may have relied on the government's inability to collect when deciding not to agree to a voluntary reduction in their food stamps under the old system. Relying on the language in the State's notice, recipients may have opted not to appeal the overpayment or not to seek judicial review of an unsuccessful administrative appeal. In other scenarios, overpaid recipients may have taken a calculated chance to protect their most indispensable resource—their food stamps—knowing that, if necessary, they could more readily part with other assets that the government might seek in a collection action or otherwise. Prior to 1996, overpaid

recipients had the benefit of protecting their food stamp supply. After 1996, they lost that benefit.

It is true that the food stamp recipients relied on a mere likelihood that they would not be held accountable for the overissuance. There was always a possibility, no matter how remote, that the State would attempt to collect for the overissuance. Reliance on a chance, however, can constitute reliance nonetheless. In *INS v. St. Cyr*, 533 U.S. 289 (2001), convicted criminal defendants challenged a new statute that removed the government's discretion to waive deportation of resident aliens convicted of certain crimes. Criminal defendants who had entered into plea agreements assuming that they would be eligible for discretionary relief from deportation—relief that had been granted liberally in the past—were shocked to learn that they were now subject to automatic deportation. The Court found that such a retroactive application of the statute was contrary to notions of fair notice, reasonable reliance, and settled expectations. *Id.* at 323-24. In particular, the Court dismissed the idea that the discretionary nature of the relief precluded review stating, "there is a clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation." *Id.* at 325. In this case, there is a clear difference between facing a remote chance that the State will initiate a collection action in state court or intercept a tax refund, and facing a certain reduction in the amount of food stamps issued. For years the food stamp recipients have reasonably relied on the settled expectation that their food stamp allotment would be relatively safe from forfeiture. Although the State may change the rules going forward, it would be contrary to familiar considerations of fair notice, reasonable reliance, and settled expectations to alter the rules applied to agency error overissuances which occurred prior to the enactment of the new amendment.

These same notions of fair notice, reasonable reliance, and settled expectations act to bar actions by the State so long after the agency error occurred. Fairness dictates that food stamp recipients, like any liable party, must have "the right to be free of stale claims" after a reasonable amount of time has passed. *American Pipe and Constr. Co. v. Utah*, 414 U.S. 538, 766 (1974). Although this case does not involve a literal retroactive expansion of a statute of limitations, it certainly is analogous and the amendment increases the legal consequences for the food stamp recipients in much the same manner. *See Hughes Aircraft*, 520 U.S. at 950 ("extending a statute of limitations after the pre-existing period of limitation has expired impermissibly revives a moribund cause of action"); *Chenault v. United States Postal Serv.*, 37 F.3d 535, 539 (9th Cir. 1994) ("a newly enacted statute that lengthens the applicable statute of limitations may not be applied retroactively to revive a plaintiff's claim that was otherwise barred under the old statutory scheme because to do so would 'alter the substantive rights' of a party and 'increase a party's liability' "). In the case of the named plaintiffs, the State failed to initiate any action to collect for overissuances for approximately twelve to fifteen years— long after the statute of limitations for filing a collection action in state court would have run.[6] Although the

---

[6] The food stamp recipients contend that such a collection action would be subject to Indiana's six-year statute of limitations for actions on accounts and contracts not in writing. The State denies that food stamps are analogous to an account or contract subject to a six-year statute of limitations, but offers no alternative statute of limitations for such a collection action. We need not decide whether the food stamp recipients are correct about the length of the statute of limitations. In the case of the named plaintiffs, the State waited approximately twelve to fifteen years before deciding to take action on the agency er-
(continued...)

State could have collected after the statute of limitations had run by intercepting tax refunds, for the reasons described above, that possibility was exceedingly remote. Certainly after more than a dozen years of state inaction, the food stamp recipients were entitled to a reasonable expectation that they would no longer be accountable for the agency error.

## III.

For the reasons stated above, we reverse the district court's grant of summary judgment and remand to the district court for further proceedings consistent with this opinion.

REVERSED.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*

---

[6] (...continued)
ror overissuance. We assume that any collection action filed in state court would be stale so long after the fact. *See* Ind. Code § 34-11-2-1 through 34-11-2-12 (describing specific state statutes of limitations, all but one of which are between two and ten years).