**NATIVE AMERICAN ARTS, INC., Plaintiff,**

v.

**THE WALDRON CORPORATION, Defendant.**

**No. 01 C–2370.**

United States District Court, N.D. Illinois, Eastern Division.

Jan. 22, 2003.

Order Denying Reconsideration April 28, 2003.

See also 2002 WL 1173513.

Michael Patrick Mullen, John Patrick Nyhan, Scott M. Kolosso, Mullen & Foster, Chicago, IL, for plaintiff.

Stephen P. Carponelli, Carponelli & Krug, P.C., Chicago, IL, Elizabeth Ann Knight, Jenna Lynn Schoeneman, Howard LaMar Huntington, Knight, Hoppe, Kurnik & Knight, LLC, Des Plaines, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ST. EVE, District Judge.

Native American Arts, Inc. ("NAA") has sued The Waldron Corporation ("Waldron") for violation of the Indian Arts and Crafts Act of 1990 (the "1990 Act") and The Indian Arts and Crafts Enforcement Act of 2000, 25 U.S.C. § 305e. Judge Conlon previously ordered a bifurcated trial on the issues of liability and damages. The parties have submitted proposed jury instructions. The Court addresses the objections to Plaintiff's Jury Instruction No. 8 below.[1]

### ANALYSIS

Plaintiff's Jury Instruction No. 8 states, in relevant part:

This is an action for alleged violations of the Indian Arts and Crafts Act which provides that an Indian Arts and Crafts Organization may bring an action against a person who, directly or indirectly, offers or displays for sale or sells a good in a manner that falsely suggests it is Indian produced, an Indian product, or the product of a particular Indian or Indian tribe or Indian arts and crafts organization resident within the United States.

Defendant objects to this instruction on two grounds. First, it argues that the reference to the terminology "directly or indirectly" is not appropriate, because that language was not contained in the statute or regulations until after November 9, 2000, and at least some of the conduct and sales took place before the amendment on that date. Second, Defendant claims that the statute should not be applied retroactively to allow Plaintiff to seek damages for Defendant's conduct that occurred before the statute was amended to afford Plaintiff standing to bring a lawsuit.

### I. Addition of "Directly or Indirectly"

 Defendant's first objection to Plaintiff's Jury Instruction No. 8 is overruled. From the face of the statute, the addition of the words "directly or indirectly" did not change the substance of the statute. As the legislative history makes clear, the addition of this language merely clarified the statute:

[T]o enhance the ability of the plaintiff to assess and calculate damages, the phrase "directly or indirectly" will be added after the phrase "against a person who." This provision clarifies that suit may be brought against a manufacturer and/or supplier when the plaintiff is not in direct competition with the manufacturer or supplier.

Senate Report (Indian Affairs Committee) No. 106–452, Oct. 2, 2000.

Further, the addition of these words has no bearing on this lawsuit. Defendant has stipulated that it "is engaged in the design and sale of jewelry," which includes a line of products called "Circle of Nations" that is created in a Native American style.

---

1. The Court is addressing this proposed instruction first in light of Plaintiff's representation at the pre-trial conference that it wanted to be heard in advance of trial on the issue of amending the complaint to include an Indian tribe as a Plaintiff if the Court sustained Defendants' objections. The Court will address the other jury instruction issues in a subsequent ruling.

(Statement of Uncontested Facts ¶ 8.) Thus, the issue is not whether Defendant "offers or displays for sale or sells a good," but instead whether it "falsely suggested its products were made by Native Americans." (*Id.* ¶ 12.)

## II. Retroactive Application of Amendment

■ Defendant's second objection is sustained. As an initial matter, retroactive application of a statute or an amendment "is not favored in the law." *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). In fact, there is a "presumption against retroactive legislation [that] is deeply rooted in our jurisprudence." *Landgraf v. USI Film Prods.,* 511 U.S. 244, 265, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994). "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Id.*

When assessing the potential for retroactive application of a statute, the Court looks to the face of the amended statute to determine if Congress "has expressly prescribed the statute's reach." *Stone v. Hamilton,* 308 F.3d 751, 754 (7th Cir.2002). "When congressional intent is clear as to the issue of prospective versus retroactive application, then this intent controls." *Mozee v. American Commercial Marine Serv. Co.,* 963 F.2d 929, 932 (7th Cir.1992) (citing *Kaiser Alum. & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 838, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990)). The amended statute, however, does not provide any such guidance. Congress has not stated its intent on whether this amendment should be applied retroactively.

Without a clear indication of Congress' intent, the Court must determine whether applying the amendment to conduct that occurred before the amendment would provide for an impermissible retroactive effect. The Supreme Court addressed a similar issue in *Hughes Aircraft Co. v. United States,* 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997). In *Hughes,* the Supreme Court was confronted with changes to the False Claims Act. Before the amendment, only the United States had standing to bring a suit against someone submitting a false claim to the Government if the Government had information in its possession that proved the falsity of the claim. *Id.* at 941, 117 S.Ct. at 1874. Private parties at the time could bring suit on behalf of the United States only where the Government did not have that information in its possession. *Id.* The amendment removed this restriction and allowed private parties to bring lawsuits even where the Government had the information. *Id.* The Supreme Court found that the statute could not be applied retroactively:

> The extension of an FCA cause of action to private parties in circumstances where the action was previously foreclosed is not insignificant. As a class of plaintiffs, *qui tam* relators are different in kind than the Government. They are motivated primarily by prospects of monetary reward rather than the public good.... In permitting actions by an expanded universe of plaintiffs with different incentives, the 1986 amendment essentially creates a new cause of action, not just an increased likelihood that an existing cause of action will be pursued.... This is true even if a cause of action remained open to some other party.

*Id.* at 949–50, 117 S.Ct. at 1877–1878.

Recently, the Seventh Circuit relied upon *Hughes* in assessing the retroactive application of an amendment to the Food Stamp Act and concluding that an amendment cannot be applied retroactively if it

increases the likelihood that a person will be sued for its actions. *Stone v. Hamilton*, 308 F.3d 751, 756–57 (7th Cir.2002). Under the Food Stamp Act amendment, Congress required states to collect from food stamp recipients where the state agency had overissued food stamps in error, and enabled the states to collect for the error by involuntarily reducing a recipient's food stamp allotment. Prior to the amendment, the states could collect when their agencies had over-issued food stamps, but they could not do so by involuntarily reducing a recipient's allotment. The Seventh Circuit held that "despite the fact that the plaintiffs remained liable for the overissuances both before and after the enactment of the amendments, viewing the effect of the amendment in a common-sense and functional manner, since the enactment of the amendment, the food stamp recipients face increased legal consequences." *Id.* at 756. The Seventh Circuit further found that "a new statute can increase the legal consequences to the affected party without necessarily increasing the dollar amount of liability." *Id.*

 Here, allowing Native American Arts to seek remedies for conduct that allegedly occurred before Native American Arts had standing to sue would have the same retroactive effect that *Hughes* and *Stone* found impermissible. Before the 2000 amendment, the only private party that had standing to file a lawsuit under the Indiana Arts and Crafts Act was a Native American tribe. *See Native American Arts, Inc. v. Moon Raven International, Inc.*, 1998 WL 325245 (N.D.Ill. Jun.10, 1998)(holding that Native American Arts, an Indian arts and crafts organization, does not have standing to sue under the 1990 Act). By expanding the class of plaintiffs that had standing under the Act to Native American arts and crafts organizations (who may also be competitors of the parties they sue), Congress increased the likelihood that a person will be sued

for the conduct described in the Act. Accordingly, Defendant's second objection to Plaintiff's Jury Instruction No. 8 is sustained.

## MEMORANDUM OPINION AND ORDER

Before an amendment to the Indian Arts and Crafts Act (the "Act"), 25 U.S.C. § 305e, only a Native American tribe could bring a private party lawsuit under the Act. On November 9, 2000, Congress amended the Act to grant Native American arts and crafts organizations standing to sue. This Court concluded on January 21, 2003 that it was inappropriate to retroactively apply the amendment to the Act to allow Plaintiff to seek damages for conduct that occurred before November 9, 2000. *See Native Am. Arts, Inc. v. Waldron Corp.*, 253 F.Supp.2d 1041, 2003 WL 164210 (N.D.Ill.2003).

Plaintiff filed a motion asking the Court to reconsider its January 21, 2003 ruling on several grounds. The Court disposed of most of Plaintiff's arguments in a February 3, 2003 order. (R. 143–1.) The Court ordered additional briefing on the issue of whether Defendant waived the issue that Plaintiff lacked standing before the 2000 amendment by not raising it as an affirmative defense in its answer. The Court finds that Defendant did not waive the issue because lack of standing is not an affirmative defense and is not subject to waiver. Accordingly, the Court denies Plaintiff's motion for reconsideration.

## ANALYSIS

### I. Lack Of Standing Is Not An Affirmative Defense Under Federal Law

 Federal Rule of Civil Procedure 8(c) provides for the need to plead affirmative defenses. Rule 8(c) lists several affirmative defenses: accord and satisfaction,

arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, and waiver. It does not list standing as an affirmative defense. *See id.* Standing's absence is not dispositive, however, because Rule 8(c)'s list is not exhaustive. *See* Fed.R.Civ.P. 8(c) (a party must plead "any other matter constituting an avoidance or affirmative defense.")

Where issues are not listed in Rule 8(c), therefore, courts must analyze whether they are affirmative defenses. By their nature, affirmative defenses require defendants to bear the burden of proof on those particular issues. *See Publications Int'l, Ltd. v. Landoll, Inc.,* 164 F.3d 337, 339–40 (7th Cir.1998). Another way to look at it is that affirmative defenses are reasons why defendants are not liable even if they admit the facts alleged in the complaint. *Instituto Nacional de Comercializacion Agricola v. Continental Ill. Nat'l Bank & Trust Co.,* 576 F.Supp. 985, 989 (N.D.Ill. 1983).

By these definitions, it is clear that standing is not an affirmative defense under federal law. This is true because Plaintiffs bear the burden of pleading and proving standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Indemnified Capital Invs., S.A. v. R.J. O'Brien & Assoc.,* 12 F.3d 1406, 1408 (7th Cir.1993). Defendants can challenge standing on a motion to dismiss—where the only issue is whether plaintiffs can establish the elements of their claims based on their allegations. *See* Charles Wright & Arthur Miller, 13A Federal Practice and Procedure § 3531.15 (2d ed.1984). Courts can also raise the issue *sua sponte. Id.* It is apparent, therefore, that standing is a plaintiff's requirement to plead and prove. Accordingly, standing is not an affirmative defense.

## II. Standing Is Not A Waivable Issue

■ Plaintiff's argument that the issue of standing is waivable flies in the face of clearly established Constitutional law. The issue of standing is "jurisdictional and not subject to waiver." *Lewis v. Casey,* 518 U.S. 343, 349 n. 1, 116 S.Ct. 2174, 2178 n. 1, 135 L.Ed.2d 606 (1996); *see also Perry v. Sheahan,* 222 F.3d 309, 313 (7th Cir.2000); *Wiggins v. Martin,* 150 F.3d 671, 673 (7th Cir.1998). Standing is a threshold requirement imposed by Article III of the Constitution, which limits federal subject matter jurisdiction to claims that present an actual case or controversy in whose outcome a plaintiff has a "personal stake." *Perry,* 222 F.3d at 313. Even where the parties agree that a plaintiff has Constitutional standing, courts must satisfy themselves that the jurisdictional requirement is met. *Rhodes v. Johnson,* 153 F.3d 785, 787 (7th Cir.1998). *See also* Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). Defendant, therefore, has not waived the standing issue even if it contested standing for the first time at the pre-trial stage.[1]

---

1. Plaintiff relies upon *LINC Finance Corp. v. Onwuteaka,* 129 F.3d 917, 922 (7th Cir.1997) in support of its position that lack of standing is a waivable affirmative defense. A closer look at *LINC Finance* reveals, however, that the Seventh Circuit had subject matter over that case through diversity jurisdiction. The Court was therefore applying state law pursuant to the *Erie* doctrine. Under Illinois law, lack of standing is an affirmative defense. *See Glisson v. City of Marion,* 188 Ill.2d 211, 242 Ill.Dec. 79, 720 N.E.2d 1034, 1039 (Ill. 1999). *LINC Finance* therefore does not stand for the proposition that lack of standing is a waivable affirmative defense under federal law.

## CONCLUSION

The Court finds that Defendant did not waive the argument that Plaintiff lacked standing under the Act by failing to list it as an affirmative defense in its answer. Standing is not an affirmative defense and it cannot be waived. Instead, it is a jurisdictional requirement that Plaintiff must plead and prove under federal law. Accordingly, Plaintiff's motion to reconsider is denied.